**No. 16-5002**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,
Plaintiff - Appellee,

v.

EL TEQUILA, LLC and CARLOS AGUIRRE, Individually,
Defendants - Appellants.

On Appeal from the United States District Court for the
Northern District of Oklahoma,
Honorable John E. Dowdell, Judge, Case No. 4:12-CV-588-JED-PJC

**APPELLEE'S SUPPLEMENTAL APPENDIX**
**VOLUME 2 OF 23**
**(Pages SA-184 to SA-277)**

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

JESSE Z. GRAUMAN
Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave., NW
Room N-2716
Washington, D.C. 20210
(202) 693-5563
grauman.jesse.z@dol.gov

# INDEX TO APPELLEE'S SUPPLEMENTAL APPENDIX

**Document** **Page (SA-)**

**Volume I**

District Court's Docket Sheet ........................................................................1

Complaint, Oct. 22, 2012 (ECF No. 2) ............................................................43

Exhibit A (ECF No. 2-1) ........................................................................48

First Amended Complaint, Oct. 29, 2012 (ECF No. 11) .....................................53

Exhibit A (ECF No. 11-1) ......................................................................58

Second Amended Complaint, Dec. 31, 2012 (ECF No. 24) ..................................63

Exhibit A (ECF No. 24-1) ......................................................................70

Opinion and Order, July 17, 2013 (ECF No. 29) ................................................75

Defendants' Answer to Plaintiff's Second Amended
Complaint, Aug. 16, 2013 (ECF No. 34) ............................................................79

Plaintiff's Motion for Leave to File a Third Amended
Complaint, Oct. 16, 2014 (ECF No. 121) ...........................................................83

Proposed Third Amended Complaint (ECF No. 121-1) ...............................89

Opinion and Order, Oct. 16, 2014 (ECF No. 122) ............................................110

Opinion and Order, Oct. 20, 2014 (ECF No. 125) ............................................114

Order, Nov. 18, 2014 (ECF No. 145) ................................................................133

Order, Feb. 5, 2015 (ECF No. 164) ..................................................................136

Order, Feb. 6, 2015 (ECF No. 169) ..................................................................139

Order, Feb. 13, 2015 (ECF No. 174) ................................................................144

Plaintiff's Motion in Limine Concerning Defendants'
Employees' Immigration Status, Feb. 19, 2015 (ECF No. 177) ..........................156

Plaintiff's Motion in Limine Concerning Any
Press Releases Issued, Feb. 20, 2015 (ECF No. 178)............................................162

Plaintiff's Motion in Limine Concerning Malicious
Prosecution And/Or Similar Unsupportable Allegations
With Regard to Plaintiff's Investigation And/Or
Litigation of This Matter, Mar. 2, 2015 (ECF No. 179).......................................167

Plaintiff's Motion in Limine Concerning any
Time Records Not Produced from October 22, 2009
Through December 2011, Mar. 4, 2015 (ECF No. 181).......................................173

Anti-Virus Certification Form,
Certificate of Digital Submission, and
Certificate of Service ........................................................................following 183

**Volume II**

Plaintiff's Brief in Support of Plaintiff's Motion for
Summary Judgment or in the Alternative for
Summary Adjudication, Mar. 19, 2015 (ECF No. 191)[1] .......................................184

Defendants' Motion to File Answer to Plaintiff's
Third Amended Complaint Out of Time,
Mar. 20, 2015 (ECF No. 196)..........................................................................223

Defendants' Proposed Answer
to Plaintiff's Third Amended Complaint
(ECF No. 196-1) ..........................................................................................226

Defendants' Supplement to Defendants' Motion
to File Answer to Plaintiff's Third Amended
Complaint Out of Time, Apr. 23, 2015 (ECF No. 207).......................................230

---

[1] Although this document was filed as part of Appellant's Appendix, page 19 of the brief was missing. Plaintiff-Appellant accordingly has included this document in the Supplemental Appendix.

Defendants' Proposed Supplemented Answer
to Plaintiff's Third Amended Complaint (ECF No. 207-1) ........................232

Order, July 10, 2015 (ECF No. 230)..................................................................236

Order, July 10, 2015 (ECF No. 232)..................................................................238

Plaintiff's Notice of Revised Backwages Owed
and to be Awarded, July 14, 2015 (ECF No. 238) ...........................................239

Declaration of Michael D. Speer,
July 14, 2015 (ECF No. 238-1) ..................................................................242

Order, July 20, 2015 (ECF No. 254)..................................................................244

Order, July 20, 2015 (ECF No. 255)..................................................................253

Order, July 24, 2015 (ECF No. 259)..................................................................256

Plaintiff's Second Notice of Revised Backwages
Owed and Awarded, Jan. 5, 2016 (ECF No. 311) ............................................267

Declaration of Michael D. Speer, Jan. 5, 2016 (ECF No. 311-1) ..............275

**Volume III**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions

Exhibit 4 (Excerpt), Defendants' Expert
Report of William Cutler, With Updated
Edits, Dated January 20, 2015 ....................................................................278

**Volume IV**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 4 (Excerpt), Defendants' Expert
Report of William Cutler, With Updated
Edits, Dated January 20, 2015 (continued) ...............................................295

Exhibit 5B, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports ............................................304

**Volume V**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 5B, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) ...........................333

**Volume VI**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 5B, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) ...........................413

**Volume VII**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 5B, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) ...........................498

**Volume VIII**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 5B, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) ...........................582

**Volume IX**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 5B, 50 Examples of Discrepancies Between Casio Reports and Payroll Reports (continued) ..........................670

Exhibit 8, Ybelka Saint-Hilaire's Narrative, Second Harvard Investigation ..........................687

Exhibit 9, Signed Form WH-56, Second Harvard Investigation ..........................694

Exhibit 15 (Excerpts), Casio Time Reports, Broken Arrow and Harvard Locations ..........................698

Exhibit 16 (Excerpts), Casio Time Reports, Memorial and Owasso Locations ..........................721

Exhibit 17, Samples of "Middle Sheets" Provided by Defendants to Victor Kubli ..........................745

**Volume X**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 17, Samples of "Middle Sheets" Provided by Defendants to Victor Kubli (continued) ..........................761

Exhibit 21, Sample Time and Pay Records, First Harvard Investigation ..........................780

Exhibit 22, Settlement Agreement, Second Harvard Investigation ..........................802

Exhibit 24, Forms WH-56 and WH-55 for Broken Arrow, Memorial, and Owasso Locations (Oct. 2009-Aug. 2011) Using William Cutler's Numbers ..........................808

**Volume XI**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 24, Forms WH-56 and WH-55
for Broken Arrow, Memorial, and Owasso
Locations (Oct. 2009-Aug. 2011)
Using William Cutler's Numbers (continued) ..........................................828

**Volume XII**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 24, Forms WH-56 and WH-55
for Broken Arrow, Memorial, and Owasso
Locations (Oct. 2009-Aug. 2011)
Using William Cutler's Numbers (continued) ..........................................901

Exhibit 25, Forms WH-56 and WH-55
for Broken Arrow, Harvard, Memorial,
and Owasso Locations (Aug. 2011-Jun. 2014)
Using Defendants' and Their Managers' Numbers....................................968

**Volume XIII**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 25, Forms WH-56 and WH-55
for Broken Arrow, Harvard, Memorial,
and Owasso Locations (Aug. 2011-Jun. 2014)
Using Defendants' and Their Managers' Numbers (continued).................980

**Volume XIV**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 25, Forms WH-56 and WH-55
for Broken Arrow, Harvard, Memorial,
and Owasso Locations (Aug. 2011-Jun. 2014)
Using Defendants' and Their Managers' Numbers (continued) ...............1060

**Volume XV**

Exhibits to Plaintiff's Motion for Summary Judgment, Except Depositions (continued)

Exhibit 25, Forms WH-56 and WH-55
for Broken Arrow, Harvard, Memorial,
and Owasso Locations (Aug. 2011-Jun. 2014)
Using Defendants' and Their Managers' Numbers (continued) ...............1145

**Volume XVI**

Portions of Deposition Transcripts

Deposition of Michael Speer
(Plaintiff's Motion in Limine Concerning
Discretionary Bonuses For Non-Exempt
Employees, Exhibit A, excerpts) ..............................................................1216

Rule 30(b)(6) Deposition of El Tequila, LLC
(Plaintiff's Motion for Summary Judgment,
Exhibit 3, excerpts)..........................................................................1221

Deposition of Carlos Aguirre
(Plaintiff's Motion for Summary Judgment,
Exhibit 6, excerpts)..........................................................................1241

Deposition of Victor Kubli
(Plaintiff's Motion for Summary Judgment,
Exhibit 7, excerpts)..........................................................................1294

Deposition of William Cutler, Jr.
(Plaintiff's Motion for Summary Judgment,
Exhibit 11, excerpts) ........................................................................1335

Deposition of Bill Hight
(Plaintiff's Motion for Summary Judgment,
Exhibit 11, excerpts) ........................................................................1353

Deposition of Javier Aguirre
(Plaintiff's Motion for Summary Judgment,
Exhibit 18, excerpts) ........................................................................1359

Deposition of Refugio Flores-Mendez
(Plaintiff's Motion for Summary Judgment,
Exhibit 19, excerpts) ........................................................................1362

Deposition of Ybelka Saint-Hilaire[2]
(Plaintiff's Motion for Summary Judgment,
Exhibit 23, excerpts) ........................................................................1365

Deposition of Ramon Rodriguez
(Plaintiff's Motion for Summary Judgment,
Exhibit 26, excerpts) ........................................................................1367

Deposition of Francisco Perez
(Plaintiff's Motion for Summary Judgment,
Exhibit 27, excerpts) ........................................................................1369

Portions of Pretrial Conference Transcript, Aug. 4, 2015 .................................1373

[2] Saint-Hilaire's deposition excerpt does not bear the district court's file-stamp because the version filed with the district court uses an extremely small font size and is difficult to read when printed. The version included here is otherwise identical to what was filed with the district court.

**Volume XVII**

Plaintiff's Trial Exhibits

Exhibit 1, Sample Time and Pay Records,
First Harvard Investigation ....................................................................1376

Exhibit 23, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports..........................................1398

**Volume XVIII**

Plaintiff's Trial Exhibits (continued)

Exhibit 23, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) .........................1453

**Volume XIX**

Plaintiff's Trial Exhibits (continued)

Exhibit 23, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) .........................1534

**Volume XX**

Plaintiff's Trial Exhibits (continued)

Exhibit 23, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) .........................1617

**Volume XXI**

Plaintiff's Trial Exhibits (continued)

Exhibit 23, 50 Examples of Discrepancies
Between Casio Reports and Payroll Reports (continued) .........................1702

**Volume XXII**

Plaintiff's Trial Exhibits (continued)

Exhibit 73, Handwritten Time Sheets,
Harvard Location ........................................................................ 1781

**Volume XXIII**

Portions of Trial Transcript ........................................................................ 1812

Testimony of Ybelka Saint-Hilaire ........................................................ 1814

Testimony of Bill Hight ........................................................................ 1857

Testimony of Carlos Aguirre .................................................................. 1874

Testimony of Victor Kubli ...................................................................... 1927

Testimony of Carlos Aguirre .................................................................. 1951

Jury Instructions ........................................................................ 1958

Perez v. El Tequila

Appeal No. 16-5002

Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment or in the Alternative for Summary Adjudication

March 19, 2015
(ECF No. 191)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 12-CV-588-JED-PJC |
| EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..…iii

INTRODUCTION……………………………………………………………………...…1

STATEMENT OF UNDISPUTED MATERIAL FACTS………………………………………..1

LEGAL STANDARD………………………………………………………………………...10

ARGUMENT………………………………………………………………………………….11

I. Defendant El Tequila, LLC Is Covered By The FLSA Because It Is An Enterprise Engaged In Commerce…………………………………………………...11

II. Defendant Carlos Aguirre Is An Employer Under The FLSA Because He Exercises Full Operational Control Of Defendant El Tequila, LLC, As Its Owner And Operator……………………………………………………………….11

III. Defendants Violated The FLSA's Recordkeeping Provisions Because They Made And Kept Inaccurate Records, Per Defendants' Testimony And As Is Evident On The Face Of The Records……..........................................................................13

IV. The Mt. Clemens' Relaxed Standard Of Proof Applies Because Defendants' Time Records Are Inaccurate And Inadequate……………………………………...20

V. Defendants Violated The FLSA's Overtime Provisions ……………………...…21

VI. Defendants Violated The FLSA's Minimum Wage Provisions ..........................25

VII. A Three-Year Limitations Statute Applies Because Defendants' Violations Were Willful........................................................................................................26

VIII. Defendants Owe $2,225,392.62 In Backwages And Liquidated Damages...…....28

IX. Plaintiff Is Entitled To Liquidated Damages Because The Affirmative Defense Of Good Faith Was Waived And, In Any Event, Would Be Inapplicable…..............31

X. Defendants Must Be Enjoined From Committing Future FLSA Violations…….33

CONCLUSION……………………………………………………………………………..34

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)……………………………………………
Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)………………………………………....
Bacchus Indus. Inc. v. Arvin Indus., Inc., 939 F.2d 887 (10th Cir. 1991)……………………….
Baker v. Flint Eng'g & Const. Co., 137 F.3d 1436 (10th Cir. 1998)…………………………….
Bledsoe v. Wirtz, 384 F.2d 767 (10th Cir. 1967)………………………………………………..
Brock v. Shirk, 833 F.2d 1326 (9th Cir. 1987)…………………………………………………..
Brown v. ScriptPro, LLC, 700 F.3d 1222 (10th Cir. 2012)……………………………………...
Celotex Corp. v. Catrett, 477 U.S. 317 (1986)…………………………………………………..
Donovan v. New Floridian Hotel, Inc., 676 F.2d 468 (11th Cir. 1982)…………………………….
Donovan v. Simmons Petroleum Corp., 725 F.2d 83 (10th Cir. 1983)……………………………
Donovan v. United Video, Inc., 725 F.2d 577 (10th Cir. 1984)…………………………………
Donovan v. Williams Oil Co., 717 F.2d 503 (10th Cir. 1983)…………………………………..
Doty v. Elias, 733 F.2d 720 (10th Cir. 1984)……………………………………………………
Falk v. Brennan, 414 U.S. 190 (1973)…………………………………………………………...
Gilligan v. City of Emporia, Kan., 986 F.2d 410 (10th Cir. 1993)………………………………
Herman v. Palo Grp. Foster Home, Inc., 183 F.3d 468 (6th Cir. 1999)…………………………
Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011)…………………………………...
McGrath v. Cent. Masonry Corp., No. CIV.A06CV00224CMACBS, 2009 WL 3158131 (D. Colo. Sept. 29, 2009)……………………………………………………………………………
Metzler v. IBP, Inc., 127 F.3d 959 (10th Cir. 1997)……………………………………………..
Monroe v. FTS USA, LLC, 763 F. Supp. 2d 979 (W.D. Tenn. 2011)……………………………..
Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266 (10th Cir. 2011)……………………...
Nguyen v. Excel Corp., 197 F.3d 200 (5th Cir. 1999)…………………………………………...
Patel v. Wargo, 803 F.2d 632 (11th Cir. 1986)…………………………………………………..
Perez v. ZL Rest. Corp., No. 13-CV-0075-MV-GBW, 2014 WL 7717614 (D.N.M. Dec. 30, 2014)……………………………………………………………………………………..
Radio Corp. of Am. v. Radio Station KYFM, Inc., 424 F.2d 14 (10th Cir. 1970)…………………
Robillard v. Bd. of Cnty. Comm'rs of Weld Cnty. Colorado, No. 11-CV-03180-PAB-KMT, 2012 WL 4442822 (D. Colo. Sept. 26, 2012)………………………………………………………
Solis v. Ronin Risk USA, LLC, No. 2:08-CV-701 TS, 2010 WL 1253978 (D. Utah Mar. 24, 2010)……………………………………………………………………………………..
Solis v. Supporting Hands, LLC, No. CIV 11-0406 JB/KBM, 2013 WL 1897822 (D.N.M. Apr. 30, 2013)……………………………………………………………………………………
Tripodi v. Microculture, Inc., 397 F. Supp. 2d 1308 (D. Utah 2005)……………………………
Tripp v. May, 189 F.2d 198 (7th Cir. 1951)……………………………………………….....
Vitkus v. Beatrice Co., 11 F.3d 1535 (10th Cir. 1993)…………………………………………..

## Statutes

29 U.S.C. § 203(d)……………………………………………………………………………
29 U.S.C. § 203(m)………………………………………………………………………....
29 U.S.C. § 203(s)……………………………………………………………………………
29 U.S.C. § 203(t)…………………………………………………………………………..
29 U.S.C. § 206…………………………………………………………………………..

29 U.S.C. § 207…………………………………………………………………………………..
29 U.S.C. § 207(a)(1)………………………………………………………………………….
29 U.S.C. § 211(c)…………………………………………………………………………….
29 U.S.C. § 215…………………………………………………………………………………..
29 U.S.C. § 216(b)…………………………………………………………………………….
29 U.S.C. § 217…………………………………………………………………………………..
29 U.S.C. § 255(a)…………………………………………………………………………….
29 U.S.C. § 260…………………………………………………………………………………..

**Rules**

Fed. R. Civ. P. 8(b)(6)…………………………………………………………………………
Fed. R. Civ. P. 8(c)…………………………………………………………………………
Fed. R. Civ. P. 30(b)(6)……………………………………………………………………..
Fed. R. Civ. P. 56(c)(1)……………………………………………………………………..

**Regulations**

29 C.F.R § 516.2(a)……………………………………………………………………………
29 C.F.R. § 531.35…………………………………………………………………………….

## INTRODUCTION

Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor, is entitled to Summary Judgment against Defendants El Tequila, LLC (El Tequila) and Carlos Aguirre (Aguirre) (collectively, Defendants) because the undisputed material facts demonstrate:

1. Defendants are covered by, and are employers under, the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. (FLSA);
2. Defendants violated the FLSA's recordkeeping, overtime, and minimum wage provisions;
3. Defendants willfully violated the FLSA;
4. Defendants owe their current and former employees $1,112,696.31 in backwages;
5. Defendants waived, or cannot prove, a good faith defense and are thus liable for liquidated damages in an amount equal to the backwages, for a total judgment of $2,225,392.62; and
6. Defendants must be enjoined from committing future FLSA violations.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

For his statement of undisputed material facts, Plaintiff states as follows:

1. Defendant El Tequila at all relevant times was a corporation with a place of, and doing, business at 7935 S. 92nd E Court, Tulsa, OK 74133, within the jurisdiction of this Court. Defendant El Tequila does business as El Tequila Mexican Kitchen, with four restaurants at: 1113 N. Elm Place, Broken Arrow, OK 74012 (Broken Arrow); 5001 S. Harvard Avenue, Tulsa, OK 74135 (Harvard); 8118 S. Memorial Drive #A, Tulsa, OK 74133 (Memorial); 12500 E. 86th Street N. #101, Owasso, OK 74055 (Owasso), all within the jurisdiction of this Court. Ex. 1, Defs.' Answer at 1 ¶ 1; Ex. 2, Def. El Tequila's Disc. Resps. at 1 ¶ 1.
2. Defendant Aguirre at all relevant times had a place of, and is doing, business in Tulsa County. Defendant Aguirre has business addresses at 7935 S. 92nd East Court, Tulsa, OK

74133; 1113 N. Elm Place, Broken Arrow, OK 74012 (Broken Arrow); 5001 S. Harvard Avenue, Tulsa, OK 74135 (Harvard); 8118 S. Memorial Drive #A, Tulsa, OK 74133 (Memorial); 12500 E. 86th Street N. #101, Owasso, OK 74055 (Owasso), all within the jurisdiction of this Court. Ex. 1, Defs.' Answer at 1 ¶ 2; Ex. 2, Def. El Tequila's Disc. Resps. at 1 ¶ 2.

3. Defendant El Tequila at all relevant times has been an enterprise engaged in commerce within the meaning of FLSA § 203(s)(1)(A). Ex. 3, Rule 30(b)(6) Dep. at 85-88; Ex. 4, Cutler Rep. at 4.

4. Defendant Aguirre actively manages, supervises, and directs the business affairs and operations of Defendant El Tequila. Defendant Aguirre acts and has acted, directly and indirectly, in the interest of Defendant El Tequila, in relation to its employees and is an employer of these employees within the meaning of the FLSA. Ex. 1, Defs.' Answer at 1 ¶ 2.

5. Defendants operate four Mexican style restaurants in and around the Tulsa metropolitan area. Ex. 1, Defs.' Answer at 1 ¶ 4.

6. Except for Antonio Gonzalez and Juan Guintan, all persons listed in Exhibit A of Plaintiff's Third Amended Complaint are current or former employees of Defendants. Ex. 5, Speer Dec. at 6 ¶ 19.

7. Defendants employ "front of the house" employees, including hosts, busboys, and waiters, and "back of the house" employees, including cooks and dishwashers. Ex. 4, Cutler Rep. at 13.

8. On December 21, 2010, the United States Department of Labor's Wage and Hour Division (WHD) began investigating Defendants' Harvard restaurant (the first Harvard investigation)

as a result of an employee complaint received on May 3, 2010. Id. at 4.

9. The first Harvard investigation revealed that from 2009 to 2011 Defendants paid employees in cash and by check. Ex. 6, Carlos Aguirre Dep. at 61:16-19.

10. Victor Kubli is Defendants' accountant responsible for processing Defendants' payroll. Ex. 3, Rule 30(b)(6) Dep. at 30:4-23; 35:16-19; Ex. 7, Kubli Dep. at 66, 91-93.

11. Defendant Aguirre admitted that the payroll summary sheets he provided to Wage Hour Investigator (WHI) Ybelka Saint-Hilaire (Saint-Hilaire; formerly Hernandez) during the first Harvard investigation were inaccurate because they only reflected the check, but not the cash, payments made to employees. Ex. 3, Rule 30(b)(6) Dep. at 189-190.

12. Defendant Aguirre admitted that accurate time records of employees' work hours were not maintained prior to the first Harvard investigation because he had instructed El Tequila managers to fabricate these hours. Ex. 6, Carlos Aguirre Dep. at 109-10.

13. On March 23, 2011, the first Harvard investigation was closed. Ex. 4, Cutler Rep. at 4.

14. Only recordkeeping violations were found for the first Harvard investigation. Id.; Ex. 6, Carlos Aguirre Dep. at 66:13-21.

15. On June 29, 2011, three months after the first Harvard investigation closed, the WHD began a second investigation of Defendants' Harvard restaurant (the second Harvard investigation) as a result of another employee complaint. Ex. 4, Cutler Rep. at 5.

16. During the second Harvard investigation, Defendants admitted to WHI Saint-Hilaire that employees were not paid for all hours worked but were instead paid a fixed weekly salary regardless of the number of hours employees worked, and Defendants' time records did not reflect employees' actual work hours. Ex. 3, Rule 30(b)(6) Dep. at 189-193, 198-99, 201-202, 215-218; Ex. 6, Carlos Aguirre Dep. at 93-94, 117-22.

17. During the second Harvard investigation, Defendants admitted to WHI Saint-Hilaire that they had instructed their employees to lie to her during the first Harvard investigation about being paid for all their work hours and their work hours being recorded accurately. Ex. 3, Rule 30(b)(6) Dep. at 189-93; Ex. 6, Carlos Aguirre Dep. at 117-22.

18. After interviewing employees and analyzing Defendants' records, WHI Saint-Hilaire determined that from December 5, 2009 to August 6, 2011 Defendants' employees at the Harvard location were paid a fixed weekly salary regardless of the number of hours worked, resulting in minimum wage and overtime violations. Ex. 8, WHI Saint-Hilaire's Narrative for Second Harvard Investigation.

19. Defendants settled the second Harvard investigation by agreeing to future FLSA compliance and paying the wages found due to employees at the Harvard restaurant for the time period of December 5, 2009 to August 6, 2011. Ex. 9, Signed WH-56; Ex. 4, Cutler Rep. at 5.

20. During his deposition in January 2015 Defendant Aguirre admitted that eight of the employees who received their unpaid minimum wage and overtime wages under the Harvard settlement agreement returned the money to Defendants. Additionally, Defendants failed to provide proof of payment for seven other employees paid under the Harvard settlement agreement. Ex. 6, Carlos Aguirre Dep. at 143-55; Ex. 5, Speer Dec. at 1 ¶ 5.

21. Defendants admitted that employees at all four of their restaurants performed the same types of work, worked the same hours, were paid the same way, and that records were maintained in the same manner. Ex. 3, Rule 30(b)(6) Dep. at 215-16; Ex. 6, Carlos Aguirre Dep. at 139-143.

22. On September 29, 2011, eight days after Defendants agreed to settle the violations for the second Harvard investigation, WHI Saint-Hilaire met with Defendants to obtain time and pay

records for Defendants' three other restaurants: Broken Arrow, Memorial, and Owasso. Ex. 4, Cutler Rep. at 6.

23. During the investigation of Defendants' three other restaurants, Defendants provided WHI Saint-Hilaire handwritten timesheets displaying the times employees started and ended work every day. Ex. 10, Handwritten Timesheets.

24. During their depositions, Defendants admitted that the hours recorded on the handwritten timesheets were fabricated. Ex. 3, Rule 30(b)(6) Dep. at 215-218, 223-227; Ex. 6, Carlos Aguirre Dep. at 91-94, 103-04.

25. Defendants hired William Cutler, a former United States Department of Labor WHI, as their expert to "review and analyze the existing facts involved in the subject case" and "opine regarding Plaintiff's FLSA investigations of Defendant's four restaurants." Ex. 4, Cutler Rep. at 3, 37.

26. Defendants' expert William Cutler conducted his own investigation of Defendants' pay practices and records for the time period of August 8, 2009 to August 6, 2011, which included interviewing Defendants' employees. Id. at 4-5, 13.

27. Defendants' expert William Cutler found overtime violations at Defendants' restaurants from August 8, 2009 to August 6, 2011.[1] Id. at 15; Ex. 11, Cutler Dep. at 75:6-12, 188:9-21.

28. On November 11, 2011, Bill Wilkinson notified Plaintiff that he had been retained by Defendants. Ex. 4, Cutler Rep. at 6.

29. On December 14, 2011, WHI Saint-Hilaire held a final conference with Defendants where she discussed the violations discovered at Defendants' three other restaurants i.e. Broken

---

[1] Defendants opened the Harvard restaurant in late 2009. Ex. 6, Carlos Aguirre Dep. at 17:4-19.

Arrow, Memorial, and Owasso. No settlement was reached at the final conference. Id. at 6, 8.

30. Defendants admitted that prior to the WHD investigations they did not keep accurate time records of employees' work hours, because they simply paid employees a fixed weekly salary regardless of the number of hours employees worked each week. Ex. 3, Rule 30(b)(6) Dep. at 170-171.

31. By January 2012, Defendants replaced the handwritten timesheets as a method of recording employees' work hours with an electronic timekeeping system; specifically, Defendants instructed all employees to use their employee number to clock in and out on the Casio QT 6600 register machines (Casio registers) used at all four of Defendants' restaurants. Id. at 66-68, 208; Ex. 6, Carlos Aguirre Dep. at 108-109, 180, 202, 208-209.

32. With respect to the Casio registers' timekeeping feature, a non-management employee's number only allows them to clock in and out. Ex. 6, Carlos Aguirre Dep. at 210.

33. At the end of each workweek, Defendants' floor managers print weekly time reports (Casio time reports) from the Casio registers for all employees. Id. at 232.

34. The Casio time reports reflect employees' time entries for every day of the workweek for which time was entered. Ex. 12, Sample Casio Time Reports.

35. If an employee did not clock in or out on a particular day, that day will not appear on the Casio time reports. Ex. 13, Francisco Rodriguez Dep. at 78:13-19; Ex. 14, Hight Dep. at 71:20-21.

36. Time entries on the Casio time reports can be altered on the Casio registers before being printed, and only Defendants' floor managers and Defendant Aguirre have the ability to

make these alterations. Ex. 6, Carlos Aguirre Dep. at 239-240; Ex. 14, Hight Dep. at 70:21-24.

37. Like non-management employees, kitchen managers are assigned employee numbers that only allow them to clock in and out. Ex. 6, Carlos Aguirre Dep. at 231:13-19.

38. Bill Hight, owner of Cash Registers, Etc., services the Casio registers used at Defendants' restaurants. Except for the Harvard restaurant, Hight installed the Casio registers at all of Defendants' restaurants. Ex. 14, Hight Dep. at 10:21-23, 28:8-25, 30:2-6.

39. Bill Hight trained Defendants and their managers on how to use the Casio registers. Ex. 6, Carlos Aguirre Dep. at 204-05.

40. On the Casio time reports there is a "Job#" heading. Underneath this heading is a job code e.g. "01". Bill Hight testified that if an asterisk appears underneath the "Job#" heading next to the job code, e.g. "*01", an alteration was made to that specific line entry. Ex. 14, Hight Dep. at 70:18-20.

41. In analyzing Defendants' Casio time reports, Plaintiff found thousands of examples where asterisks appear under the "Job#", indicating alterations, and in many cases all of the time entries have been zeroed out. There are also thousands of examples where asterisks appear under the "Job#," indicating alterations, and the time entries still appear, but something on that line was changed. Ex. 15, Casio Time Reports with Asterisks and Zeroes—Broken Arrow and Harvard; Ex. 16, Casio Time Reports with Asterisks and Zeroes—Memorial and Owasso.

42. Bill Hight testified that zeroes on the Casio time reports indicate that "[Defendants] went into the editing portion of the program [and] whatever time was there they zeroed out." Ex. 14, Hight Dep. at 72-73.[2]

43. With respect to payroll records, Defendants' practice is to take the hours listed on the Casio time reports and manually transfer them onto a middle sheet (the middle sheet) created by Defendant Aguirre, which is the only document Defendants provide their accountant Victor Kubli for payroll processing.[3] Kubli then uses the information on the middle sheet to process payroll and generate pay records. Ex. 3, Rule 30(b)(6) Dep. at 216-218, 223-227; Ex. 6, Carlos Aguirre Dep. at 258; Ex. 17, Samples of Middle Sheets Provided by Defendants to Accountant; Ex. 7, Kubli Dep. at 116-117.

44. By selecting a sample of 11 employees, selected from all four restaurants and all types of positions for every year since 2012, and analyzing time and pay records for these employees, Plaintiff determined that Defendants' time and pay records continue to be inaccurate. Specifically, WHD District Director Michael Speer compared the total number of work hours listed on the Casio time reports for these 11 employees with the total number of work hours listed on Defendants' middle sheet for these same employees and found 50 examples where the numbers do not match; the number of work hours listed on Defendants' middle sheet is often lower than the number of work hours listed on the Casio time reports. Sometimes, the

---

[2] Additionally, in his Third Amended Complaint, Plaintiff added the following new facts to the previous version of his Complaint: "Defendants have manually altered the [Casio time] reports in order to reduce the actual hours shown as worked by employees." (Doc. 165 at 3 ¶ V2). Defendants did not file an amended Answer denying these allegations. Under FRCP 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Because a responsive pleading was required and Defendants' failed to deny Plaintiff's allegations, the allegation was admitted.

[3] For ease of reference, Plaintiff refers to these middle sheets as "the middle sheets." That is not how Defendants refer to these sheets, however.

number of work hours listed on the Casio time reports does not show up on Defendants' middle sheet. Ex. 5, Speer Dec. at 5-6 ¶ 18.

45. Defendant Aguirre, Defendants' accountant Victor Kubli, and Defendants' expert William Cutler were all shown time and pay records for these 11 employees and they all agreed that Defendants' time and pay records were inaccurate and employees were not paid for all their work hours. Ex. 7, Kubli Dep. at 184-311; Ex. 6, Carlos Aguirre Dep. at 276-400; Ex. 11, Cutler Dep. at 291-335.

46. During their depositions in 2014, Defendants' managers testified that during this time period back of the house employees and front of the house employees worked approximately 60 and 45 hours a week, respectively. Ex. 18, Javier Aguirre Dep. at 19-21; Ex. 19, Flores-Mendez Dep. at 44-46.

47. On October 22, 2012, Plaintiff filed suit against Defendants alleging willful violations of the FLSA from October 2009 to the present (Doc. 2).

48. On September 22, 2014, Plaintiff filed a motion for a protective order (Doc. 106) after learning that:

(a) Defendants coerced their employees—most of whom are monolingual Spanish speakers—into signing waivers written in English purporting to waive all privileges, in order to learn who had given a statement to the WHD;

(b) told their employees that the individual who interviewed them in August 2014 was an official from the United States Department of Labor when in fact he was Defendants' expert William Cutler.

Doc. 106-1; Ex. 4, Cutler Rep. at 158-175; Ex. 20, Melecio Perez Dep. at 79:11-14.

49. On February 2, 2015, the Court granted Plaintiff's motion for a protective order. (Docs. 162-63).

## LEGAL STANDARD

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus. Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). If the movant can carry its burden, Federal Rule of Civil Procedure (FRCP) 56 requires the nonmoving party to designate facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The nonmoving party may not rest on its pleadings, but must cite to particular parts of material in the record to support its assertion that a fact cannot be or is genuinely disputed. See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993); see also Fed. R. Civ. P. 56(c)(1). FRCP 56 requires the nonmoving party to set forth sufficient evidence on which the trier of fact could reasonably find in its favor. Anderson, 477 U.S. at 252. A mere scintilla of evidence will not suffice to defeat summary judgment. Vitksus, 11 F.3d at 1539. "By its very terms, [the FRCP 56] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

## ARGUMENT

Congress passed the FLSA in an effort to protect workers from substandard wages and oppressive working hours. Perez v. ZL Rest. Corp., No. 13-CV-0075-MV-GBW, 2014 WL 7717614, at *5 (D.N.M. 2014) (citations omitted). The FLSA requires covered employers to pay their non-exempt employees at least the federal minimum wage, pay overtime for hours worked in excess of 40 in a workweek, and maintain employment records. 29 U.S.C. §§ 206-07, 211(c).

### I. Defendant El Tequila, LLC Is Covered By The FLSA Because It Is An Enterprise Engaged In Commerce

An employer is covered by the FLSA if it is an enterprise engaged in commerce. 29 U.S.C. § 203(s) (defining "enterprise engaged in commerce" as an enterprise that has employees engaged in commerce . . . and has annual gross revenue of $500,000 or greater); see also Tripodi v. Microculture, Inc., 397 F. Supp. 2d 1308, 1313 (D. Utah 2005).

Here, Defendant El Tequila stipulated that it is an enterprise engaged in commerce. Ex. 3, Rule 30(b)(6) Dep. at 85-88; Ex. 4, Cutler Rep. at 4. As such, Defendant El Tequila is covered by the FLSA.

### II. Defendant Carlos Aguirre Is An Employer Under The FLSA Because He Exercises Full Operational Control Of Defendant El Tequila, LLC, As Its Owner And Operator

"'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" Solis v. Ronin Risk USA, LLC, No. 2:08-CV-701 TS, 2010 WL 1253978, at *2 (D. Utah 2010) (quoting Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986)). FLSA § 203(d) defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee …." 29 U.S.C. § 203(d). In interpreting this definition, the United States Supreme Court held that an "employer"

under the FLSA includes individuals with "managerial responsibilities" and "substantial control of the terms and conditions of [employees'] work." Falk v. Brennan, 414 U.S. 190, 195 (1973) (recognizing the FLSA's expansive definition of "employer"). To determine whether an individual defendant is an employer under the FLSA, the Tenth Circuit Court of Appeals applies the economic reality test, which looks at whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines employees' rate and method of payment, and maintains employment records. Robillard v. Bd. of Cnty. Comm'rs of Weld Cnty. Colorado, No. 11-CV-03180-PAB-KMT , 2012 WL 4442822, at *2 (D. Colo. 2012) (citing Baker v. Flint Eng'g & Constr. Co., 137 F.3d 1436, 1440 (10th Cir. 1998).

Here, Defendant Aguirre stipulated that he is an employer of Defendant El Tequila's employees within the meaning of the FLSA. Ex. 1, Defs.' Answer at 1 ¶ 2. Defendant Aguirre also stipulated he makes all decisions for Defendant El Tequila, as its owner and operator. Ex. 6, Carlos Aguirre Dep. at 18:13-22. Defendant Aguirre opened all four of Defendant El Tequila's restaurants and selected their locations, Id. at 16-17. Defendant Aguirre is listed as a personal guarantor on the property leases for each restaurant, Id. at 28:18-25, 29:1-11. Additionally, Defendant Aguirre testified that he has the authority to hire, fire, and discipline employees, Id. at 21:14-25; sets the restaurants' operating hours, Id. at 19:18-20; determines employees' rate and method of payment, Id. at 19:21-25, 61:16-22, 62:13-25, 63:1-2; 139: 19-25; and is responsible for maintaining time and pay records, Id. at 22:3-17. As such, Defendant Aguirre is an employer under the FLSA, jointly and severally liable for unpaid wages.

### III. Defendants Violated The FLSA's Recordkeeping Provisions Because They Made And Kept Inaccurate Records, Per Defendants' Testimony And As Is Evident On The Face Of The Records

FLSA § 211(c) requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). Among other things, employers must record the time of day and day of week on which an employee's workweek begins; the employee's regular hourly pay rate for any week in which overtime compensation is due; hours worked each workday and workweek; total daily or weekly straight-time earnings, exclusive of premium overtime compensation; and total premium pay for overtime hours.

29 C.F.R. § 516.2(a). Failure to keep accurate and adequate records constitutes an independent violation of the FLSA. Perez v. ZL Rest. Corp., 2014 WL 7717614, at *8; see also Solis v. Supporting Hands, LLC, No. CIV 11-0406 JB/KBM, 2013 WL 1897822, at *23 (D.N.M. 2013) (holding that employers' time records were inaccurate or inadequate as a matter of law because employer had altered timesheets that accurately reflected overtime hours worked by employees); Monroe v. FTS USA, LLC, 763 F. Supp. 2d 979, 988-89 (W.D. Tenn. 2011) (same); McGrath v. Cent. Masonry Corp., No. CIV.A06CV00224CMACBS, 2009 WL 3158131, at *7 (D. Colo. Sept. 29, 2009) (same).

#### It Is Undisputed That Defendants Made And Kept Inaccurate And Inadequate Time Records In Violation Of the FLSA Over the Course Of Several WHD Investigations At All Four of Defendants' Restaurants

On December 21, 2010, the WHD began investigating one of Defendants' four restaurants, namely, the Harvard restaurant. Ex. 4, Cutler Rep. at 4. To determine Defendants' compliance with the FLSA, WHI Saint-Hilaire requested Defendants' time and pay records for the period of January 20, 2009 to January 18, 2011. Id. Defendants provided WHI Saint-Hilaire

time and payroll summary sheets.[4] Ex. 21, Sample Time & Pay Records from First Harvard Investigation. Defendant Aguirre later admitted that the payroll summary sheets he provided to WHI Saint-Hilaire were inaccurate because they only reflected the check, but not the cash, payments made to employees. Ex. 3, Rule 30(b)(6) Dep. at 189-190. Defendant Aguirre also admitted that accurate time records of employees' work hours were not kept prior to the first Harvard investigation because he had instructed El Tequila managers to fabricate these hours:

> Q: Did you tell [El Tequila managers] not to worry about keeping the hours prior to the Department of Labor's first Harvard investigation?
> A: Before -- and I tell them just trying to write like a 45 hours, something like that.
> Q: And it didn't matter if it was right?
> A. Didn't matter.
>
> Ex. 6, Carlos Aguirre Dep. at 110:14-21.

On March 23, 2011, the first Harvard investigation was closed. Ex. 4, Cutler Rep. at 4. It is undisputed that recordkeeping violations were found for this investigation.[5] Id.; Ex. 6, Carlos Aguirre Dep. at 66:18-21.

On June 29, 2011, three months after the first Harvard investigation closed, the WHD began a second investigation of Defendants' Harvard restaurant as a result of another employee complaint. Ex. 4, Cutler Rep. at 5. During this investigation, Defendants admitted to WHI Saint-Hilaire that employees were not paid for all hours worked but were instead paid a fixed weekly salary regardless of the number of hours employees worked, and Defendants' time

---

[4] It was subsequently learned through the depositions of Defendants and Defendants' accountant Victor Kubli that these payroll summary sheets were actually created by Defendants' accountant Victor Kubli and were not time records maintained at the Harvard restaurant by Defendants. Ex. 3, Rule 30(b)(6) Dep. at 223-27; Ex. 6, Carlos Aguirre Dep. at 79-83; Ex. 7, Kubli Dep. at 136-139.

[5] As explained further below, WHI Saint-Hilaire found no minimum wage or overtime violations because Defendants instructed employees to lie to WHI Saint-Hilaire regarding the hours they worked and how much they were paid.

records did not reflect employees' actual work hours. Ex. 3, Rule 30(b)(6) Dep. at 189-193, 198-99, 201-202, 215-218; Ex. 6, Carlos Aguirre Dep. at 93-94, 117-22. Defendants also admitted that they had instructed their employees to lie to WHI Saint-Hilaire during the first Harvard investigation about being paid for all their work hours and their work hours being recorded accurately:

> Q. Did you also tell [WHI Saint-Hilaire] that you had a meeting with the employees at the Harvard Location and instructed them how to answer questions raised by wage and hour?
> A. Yes.
> Q. Okay. So you admit that you told the employees that?
> A. Yeah, I told them.
> Q. What did you tell them?
> A. I told them that maybe somebody from the Department of Labor, they are going to ask them, you know, how they get paid, if they get paid by the hour or weekly. And I told them just to tell them you get paid by the hour.
> Q. Even though that wasn't true?
> A. And that was not true.
>
> Ex. 3, Rule 30(b)(6) Dep. at 189-93; Ex. 6, Carlos Aguirre Dep. at 117-22.

Defendants also admitted that employees at all four of their restaurants performed the same types of work, worked the same hours, were paid the same way, and that records were maintained in the same manner. Ex. 3, Rule 30(b)(6) Dep. at 215-16; Ex. 6, Carlos Aguirre Dep. at 139-143.

On September 21, 2011, WHI Saint-Hilaire held a final conference with Defendants where she explained the violations she discovered during this second investigation of Defendants' Harvard restaurant, including the recordkeeping violations. Defendants settled the second Harvard investigation by agreeing to future FLSA compliance and paying the wages found due to employees at the Harvard restaurant for the time period of December 5, 2009 to August 6, 2011. Ex. 9, Signed WH-56; Ex. 4, Cutler Rep. at 5. Defendants requested a payout

and thus signed a Settlement Installment Agreement. Ex. 6, Carlos Aguirre Dep. at 132-33; Ex. 22, Settlement Installment Agreement.

On September 29, 2011, eight days after Defendants agreed to settle the violations for the second Harvard investigation, WHI Saint-Hilaire met with Defendants to obtain time and pay records for Defendants' three other restaurants i.e. the Broken Arrow, Memorial, and Owasso restaurants. Ex. 4, Cutler Rep. at 6. During the investigation of Defendants' three other restaurants, Defendants provided WHI Saint-Hilaire handwritten timesheets displaying the times employees started and ended work every day. Ex. 10, Handwritten Timesheets. However, these timesheets only covered the summer months of 2011. Id. Defendants later admitted that the hours recorded on these handwritten time sheets were fabricated:

> Q. Okay. When we talked earlier about the records that didn't have the accurate amount of hours worked, were [the handwritten timesheets] the type of documents that we were talking about?
> A. Yes.
> Q. Okay. So when you said that you had documents that had the hours worked not right, These are the documents?
> A. Those are the documents, yes.
> Q. They are not accurate?
> A. Not accurate, yes.

Ex. 3, Rule 30(b)(6) Dep. at 215-218, 223-227; Ex. 6, Carlos Aguirre Dep. at 91-94, 103-04.

On December 14, 2011, WHI Saint-Hilaire held a final conference with Defendants where she discussed the violations discovered at Defendants' three other restaurants. Ex. 4, Cutler Rep. at 6. By this point, Defendants had retained Bill Wilkinson as their attorney. Id. No settlement was reached at this final conference.

On October 22, 2012, Plaintiff filed suit against Defendants alleging willful violations of the FLSA from October 2009 to the present (Doc. 2).[6] In discovery, Plaintiff requested all of Defendants' time and pay records from October 2009 to November 2014.[7] Defendants refused to produce records beyond 2011, however, and did so only after ordered by the Court multiple times (Docs. 55, 57, 112, 139). Through discovery, Plaintiff learned the facts below about Defendants' time and pay records for the time period of January 2012 to June 2014.

By January 2012, Defendants replaced the handwritten timesheets as a method of recording employees' work hours with an electronic timekeeping system; specifically, Defendants instructed all their employees to use their employee number to clock in and out on the Casio registers. Ex. 6, Carlos Aguirre Dep. at 108-09, 180, 202, 208-09; Ex. 3, Rule 30(b)(6) Dep. at 66-68, 208. With respect to the Casio registers' timekeeping feature, a non-management employee's number only allows them to clock in and out. Ex. 6, Carlos Aguirre Dep. at 210. Every time an employee clocks in or out, the Casio register prints out a chit receipt displaying the employee's name, date, and time entry. Ex. 6, Carlos Aguirre Dep. at 220-222; Doc. 154. Separately, at the end of each workweek, Defendants' floor managers print the weekly Casio time reports from the Casio registers for all employees. Ex. 6, Carlos Aguirre Dep. at 232. These Casio time reports reflect employees' time entries for every day of the workweek that the employee entered time. Ex. 12, Sample Casio Time Reports. If an employee did not clock in or out on a particular day, that day will not show up on the Casio time report; for example, if the employee did not clock in or out on "Monday" because the employee was off that day,

---

[6] As explained below, FLSA § 255(a) imposes a two-year limitations statute unless the defendant's violations are willful, in which case a three-year limitations statute applies.

[7] The Court ruled (Doc. 112) previously that the relevant time period was until November 30, 2014. However, Defendants have only produced complete records up to June 2014. Thus, Plaintiff has been unable to determine whether Defendants have achieved FLSA compliance.

"Monday" will not appear on the Casio time report for that week. Ex. 13, Francisco Rodriguez Dep. at 78:13-19; Ex. 14, Hight Dep. at 71:20-21.

The time entries on these Casio time reports can be altered on the Casio registers before they are printed, and only Defendants' floor managers and Defendant Aguirre have the ability to make these alterations. Ex. 6, Carlos Aguirre Dep. at 239-240; Ex. 14, Hight Dep. at 70:21-24. As Bill Hight testified, on the Casio time reports if an asterisk appears underneath the "Job#" heading next to the job code that means an alteration was made to that line entry. Ex. 14, Hight Dep. at 72-73. In analyzing Defendants' Casio time reports, Plaintiff found thousands of examples where asterisks appear under the "Job#" heading, indicating alterations, and many instances where all the time entries have been zeroed out. Ex. 15, Casio Time Reports with Asterisks and Zeroes—Broken Arrow and Harvard; Ex. 16, Casio Time Reports with Asterisks and Zeroes—Memorial and Owasso. When a Casio time report shows time zeroed out—i.e., an entry of 0:00-0:00—that means that "[Defendants] went into the editing portion of the program [and] whatever time was there they zeroed out." Ex. 14, Hight Dep. at 72-73. Given the thousands of alterations, Defendants' time reports from the Casio registers cannot be considered accurate.

With respect to pay records, Defendants' practice is to take the hours listed on the Casio time reports and manually transfer them onto a middle sheet created by Defendant Aguirre, which is the only document Defendants provide their accountant Victor Kubli for payroll processing. Kubli then uses the information on the middle sheet to process payroll and generate pay records. Ex. 3, Rule 30(b)(6) Dep. at 215-218, 223-227; Ex. 6, Carlos Aguirre Dep. at 258; Ex. 17, Samples of Middle Sheets Provided by Defendants to Accountant; Ex. 7, Kubli Dep. at 116-117. By selecting a sample of 11 employees, selected from all four restaurants and all types

of positions for every year since 2012, and analyzing time and pay records for these employees, Plaintiff determined that Defendants' time and pay records continue to be inaccurate. Specifically, WHD District Director Michael Speer compared the total number of work hours listed on the Casio time reports for these 11 employees with the total number of work hours listed on Defendants' middle sheet for these same employees and found 50 examples where the numbers do not match; the number of work hours listed on Defendants' middle sheet is often lower than the number of work hours listed on the Casio time reports. Sometimes, the number of work hours listed on the Casio time reports does not show up on Defendants' middle sheet, Ex. 5, Speer Dec. at 5-6 ¶ 18:

> Q. And would you agree that according to the time sheets -- again, I'm asking about the time sheets -- he worked 99 hours and 20 minutes?
> A. Yes.
> Q. Okay. And you would agree that the 99 hours and 20 minutes was not reported to Victor by you?
> [Wilkinson objects]
> Q. Did you report the 99 hours and 20 minutes to Victor?
> A. No.
>
> Ex. 6, Carlos Aguirre Dep. at 293.

By not providing the Casio time reports to their accountant Victor Kubli for payroll processing, Defendants effectively render the Casio time reports obsolete. Consequently, because payroll is processed using only the middle sheet, Defendants' pay records often do not accurately reflect employees' work hours and employees are not compensated for all their work hours. Defendant Aguirre, Defendants' accountant Victor Kubli, and Defendants' expert William Cutler were all shown these 50 examples and they all agreed that Defendants' time and pay records were inaccurate and employees were not paid for all their work hours. Ex. 7, Kubli Dep. at 184-311; Ex. 6, Carlos Aguirre Dep. at 276-400; Ex. 11, Cutler Dep. at 291-335. During his deposition, Aguirre admitted multiple times that the records were inaccurate:

Q. How many hours was she not paid for according to this?
A. 61 hours.
Q. And 2 minutes?
A. Yes.
Q. Is that correct?
A. Yeah.
Q. Is your -- is the -- are these payroll documents correct with regard to Ms. Diaz?
A. No.

Ex. 6, Carlos Aguirre Dep. at 303:6-15.

In short, because there is no genuine dispute of material fact regarding whether Defendants fabricated, falsified, altered, and made incorrect time records, the Court should rule that Defendants failed to keep accurate and adequate time records in violation of 29 U.S.C. § 211(c).

## IV. The Mt. Clemens' Relaxed Standard Of Proof Applies Because Defendants' Time Records Are Inaccurate And Inadequate

"[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)). In Mt. Clemens, the Supreme Court established a relaxed standard of proof for an award of back wages in FLSA cases where an employer has kept inadequate or inaccurate time records. 328 U.S. at 686-88. Specifically, where an employer has not maintained adequate or accurate records of hours worked, an employee need only prove that "he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. at 687. The Tenth Circuit Court of Appeals has explicitly provided that the Mt. Clemens' relaxed standard of proof applies in cases where an employer has kept

inadequate or inaccurate records. Donovan v. Simmons Petroleum Corp., 725 F.2d 83, 85 (10th Cir. 1983).

Here, as discussed above, it is undisputed that Defendants have not kept accurate time records. Defendants fabricated hours, falsified handwritten timesheets, altered time reports, and made incorrect records. As such, the Mt. Clemens standard of proof applies here.

**V. Defendants Violated The FLSA's Overtime Provisions**

FLSA § 7(a) requires employers to pay its employees overtime pay for work in excess of 40 hours a week at the rate of one and one-half times the employee's regular rate. 29 U.S.C. § 207(a)(1). "To succeed on an FLSA claim for unpaid overtime, the plaintiff has the burden of proving that he performed work for which he was not properly compensated." Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230 (10th Cir. 2012) (citations omitted). Plaintiffs can meet their burden of establishing employer liability by, among other methods, offering evidence from the employer's records, policies, and supervisor testimony. Donovan v. Williams Oil Co., 717 F.2d 503, 505-506 (10th Cir. 1983) (approving use of employer's sales records to establish hours worked by employees); see also Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 472-73 (11th Cir. 1982) (approving use of supervisor testimony to prove liability).

Here, it is undisputed that Defendants paid all employees a fixed weekly salary for a regular workweek longer than 40 hours. It is undisputed that overtime violations were found during the second Harvard investigation and Defendants agreed to repay the backwages due as a result of these violations. During the second Harvard investigation, WHI Saint-Hilaire interviewed Defendants' employees and found that back of the house employees worked an average of 72 hours a week:

> It was determined that any employee that worked in the kitchen area, which were the cooks and dishwashers, worked an average of 72 hours a week. These employees worked

> six days a week and started work at 8:30 a.m. to 9:00 a.m. and ended their shift at 10:00 p.m. during week days and at 11:00 p.m. to 11:30 p.m. on Fridays and Saturdays. They also took an hour and a half to a two hour break during midday of their shift.

Ex. 8, WHI Saint Hilaire's Narrative for Second Harvard Investigation at DOL 1016; Ex. 4, Cutler Rep. at 9.

These back of the house employees were paid an average weekly salary of $450, inclusive of the cash and check payments made by Defendants.[8] Id. On average, these employees earned $6.25 an hour—a rate violative of the FLSA's minimum wage and overtime provisions, which, respectively, require employers to pay at least the federal minimum wage of $7.25 an hour and one and one-half times the employee's regular rate for work in excess of forty hours a week.[9] 29 U.S.C §§ 206(a)(1)(C), 207(a)(1).

With respect to front of the house employees, WHI Saint-Hilaire found that they worked an average of 62 hours a week and received an average weekly salary of $550, inclusive of the cash and check payments made by Defendants. Ex. 8, WHI Saint Hilaire's Narrative for Second Harvard Investigation at DOL 1016; Ex. 4, Cutler Rep. at 9. On average, these employees earned $8.87 an hour for all hours worked, even for those hours over forty a week. This arrangement violated the FLSA's overtime provisions because overtime hours were not paid at one and one-half times the employee's regular rate.

In total, WHI Saint-Hilaire found that Defendants owed 58 employees $261,760.77 in backwages for minimum wage and overtime violations for the Harvard restaurant for the time

---

[8] In calculating backwages, the use of averages has been approved by the Tenth Circuit Court of Appeals. See Bledsoe v. Wirtz, 384 F.2d 767, 771 (10th Cir. 1967).

[9] If the purported regular rate is less than the minimum wage, as was the case for back of the house employees, then the minimum wage prescribed by the FLSA becomes the legal "regular rate" and is the base to be used not only in determining the minimum wage, but also the overtime compensation. Perez v. ZL Rest. Corp., 2014 WL 7717614, at *7.

period of December 5, 2009 to August 6, 2011. Ex. 9, Signed WH-56; Ex. 22, Settlement Installment Agreement. Defendants signed a WH-56 Form and a Settlement Installment Agreement to resolve the second Harvard investigation. Id. However, it was later learned that Defendants paid some, but not all of the employees due wages under this settlement agreement. Ex. 3, Rule 30(b)(6) Dep. at 172-88, 208-215. Although Defendants issued checks to employees listed in the settlement agreement, eight of the employees cashed the checks and returned the money to Defendants. Ex. 6, Carlos Aguirre Dep. at 143-55; Ex. 5, Speer Dec. at 1 ¶ 5. Additionally, Defendants failed to provide proof of payment for seven other employees paid under the settlement agreement. Ex. 5, Speer Dec. at 1 ¶ 5. Defendant Aguirre testified that he believes that the employees who returned the money to him were nonetheless paid. Ex. 6, Carlos Aguirre Dep. at 143-55. Not so. Under 29 C.F.R. § 531.35, "the wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." As such, Defendants owe unpaid minimum wage and overtime wages to those employees who returned the money to Defendants and to employees for whom Defendants failed to provide proof of payment.

It is also undisputed that overtime violations occurred at Defendants' three other restaurants—Broken Arrow, Memorial and Owasso—from August 8, 2009 to August 6, 2011. During the second Harvard investigation, Defendants admitted to WHI Saint-Hilaire that employees performed the same types of work and worked the same hours at all four of Defendants' restaurants. Ex. 3, Rule 30(b)(6) Dep. at 215-16; Ex. 6, Carlos Aguirre Dep. at 139-143. Additionally, Defendants' expert witness William Cutler testified that overtime violations

occurred during the time period of August 8, 2009 to August 6, 2011 at all four of Defendants' restaurants:

> Q. Okay. Do you believe back wages are owed by El Tequila in this case?
> A. I believe there appears to be with respect to the first set of investigations that there would be, if all the information is correct, that there would be overtime violations that exist in this case.

Ex. 11, Cutler Dep. at 75:6-12, 188:9-21; Ex. 4, Cutler Rep. at 15.

Cutler based this statement on his own investigation of Defendants' records and pay practices, which included interviewing Defendants' employees. Ex. 4, Cutler Rep. at 4-5, 13. Cutler's investigation revealed that for the time period of August 8, 2009 to August 6, 2011, back of the house employees worked an average of 61.4 hours a week and earned an average weekly salary of $557.36. Ex. 4, Cutler Rep. at 15. On average, these employees earned $9.08 an hour for all hours worked, even for those hours over 40 a week. With respect to front of the house employees, Cutler found that they worked an average of 57.2 hours a week and earned an average weekly salary of $563.91. Id. at 16. On average, these employees earned $9.86 an hour for all hours worked, even for those hours over 40 a week. Defendants' pay scheme violated the FLSA's overtime provisions because front of the house employees and back of the house employees' overtime hours were not paid at the rate of one and one-half times the employees' regular rate. It is undisputed that Cutler determined that front of the house employees and back of the house employees were not being paid overtime pay for hours worked over 40 a week during the period of August 8, 2009 to August 6, 2011.

It is also undisputed that overtime violations occurred at all four of Defendants' from August 6, 2011 to June 30, 2014. During their depositions in 2014, Defendants and Defendants' managers testified that during this time period back of the house employees and front of the house employees worked approximately 60 and 45 hours a week, respectively. Ex. 18, Javier

Aguirre Dep. at 19-21; Ex. 19, Flores-Mendez Dep. at 44-46; Ex. 3, Rule 30(b)(6) Dep. at 53:6-13, 100-01, 170:12-19, 193:7-21, 198:1-6, 237:15-17, 238:15-20; Ex. 26, Ramon Rodriguez Dep. at 34-36; Ex. 27, Francisco Perez Dep. 44-51; Ex. 6, Carlos Aguirre Dep. 139-143. However, after analyzing Defendants' tax and pay records for this time period, Plaintiff determined that Defendants' records show that back of the house employees and front of the house employees were not paid overtime pay for work hours in excess of 40 a week.[10] Ex. 5, Dec. of Michael Speer at 3 ¶ 11.

In short, it is undisputed that Defendants failed to pay their employees overtime pay for hours worked in excess of 40 a week, per the Harvard settlement agreement and Defendants' admissions, expert testimony, expert report, supervisor testimony, and records. As such, Defendants violated the FLSA's overtime provisions.

## VI. Defendants Violated The FLSA's Minimum Wage Provisions

FLSA § 206 requires employers to pay its employees at least the federal minimum wage of $7.25 an hour. 29 U.S.C. § 206.[11]

Here, it is undisputed that Defendants paid all employees a fixed weekly salary, regardless of the number of hours employees worked. It is also undisputed that minimum wage violations were found during the second Harvard investigation and that Defendants agreed to

[10] In 2011 Defendants started paying their employees only by check. Thus, Plaintiff relied on Defendants' pay records to determine employees' wages. Ex 3, Rule 30(b)(6) Dep. at 54:4-6, 205:10-12; Ex. 6, Carlos Aguirre Dep. at 140-41, 157:5-8, 158:15-18, 159:22-25.

[11] However, an employer is permitted to pay employees who receive tips a cash wage less than the minimum wage. 29 U.S.C. § 203(m). The FLSA permits the employer to apply a "tip credit" to make up the difference between the cash wage and the statutory minimum wage. The employer is allowed to apply the tip credit only toward the wages of employees who qualify as "tipped employees." FLSA § 203(t) defines a tipped employee as any employee engaged in an occupation in which he customarily and regularly receives more than $30 per month in tips. This information is relevant to the backwage calculations for Defendants' servers who, beginning in 2012, began receiving an hourly wage of $3.63 an hour.

repay the backwages due as a result of these violations for the time period of December 5, 2009 to August 6, 2011. As mentioned above, WHI Saint-Hilaire found that, on average, back of the house employees worked 72 hours a week and were paid $450 a week, inclusive of the cash and check payments made by Defendants. Consequently, these employees were paid $6.25 an hour—a rate violative of the FLSA's minimum wage provisions requiring a minimum wage of $7.25 an hour. Although Defendants agreed to settle this case and paid some of the employees under the Harvard settlement agreement, Defendants accepted kickbacks from eight employees and also failed to produce proof of payment for seven other employees. As such, these 15 employees are still owed their unpaid minimum wage and overtime wages under the Harvard settlement agreement.

## VII. A Three-Year Limitations Statute Applies Because Defendants' Violations Were Willful

FLSA § 255(a) imposes a two-year limitations statute unless the defendant's violations are willful, in which case a three-year limitations statute applies. 29 U.S.C. § 255(a); Mumby v. Pure Energy Servs. (USA), Inc., 636 F.3d 1266, 1270 (10th Cir. 2011). Violations are willful if the defendant knew that its conduct violated, or acted with reckless disregard for, the FLSA's provisions. Gilligan v. City of Emporia, Kan., 986 F.2d 410, 413 (10th Cir. 1993).

Here, it is undisputed that Defendants instructed their managers to fabricate employees' work hours, Ex. 6, Carlos Aguirre Dep. at 110:14-21; lied to WHI Saint-Hilaire about paying employees for all their work hours and recording those hours accurately, Ex. 3, Rule 30(b)(6) Dep. at 189-193, 198-99, 201-202, 215-218; Ex. 6, Carlos Aguirre Dep. at 93-94, 117-22; instructed employees to lie to WHI Saint-Hilaire about the same, Ex. 3, Rule 30(b)(6) Dep. at 189-93; Ex. 6, Carlos Aguirre Dep. at 117-22; provided WHI Saint-Hilaire handwritten timesheets with false information, Ex. 3, Rule 30(b)(6) Dep. at 215-218, 223-227; Ex. 6, Carlos

Aguirre Dep. at 91-94, 103-04; continued their illegal practice of paying employees a fixed weekly salary that did not take into account the number of hours employees worked despite having been previously investigated and notified of the FLSA's requirements, Ex. 23, Saint-Hilaire Dep. at 69:19-24; accepted kickbacks from employees who had been paid in accordance with the Harvard settlement agreement, Ex. 3, Rule 30(b)(6) Dep. at 172-188, 208-215; caused thousands of alterations to time reports printed from the Casio registers, Ex. 15, Casio Time Reports with Asterisks and Zeroes—Broken Arrow and Harvard; Ex. 16, Casio Time Reports with Asterisks and Zeroes—Memorial and Owasso; had their monolingual Spanish-speaking employees sign waivers written in English purporting to waive all privileges in an attempt to learn which employees had spoken to the WHD, Doc. 162 ("The Court is aware of the waiver forms that El Tequila employees executed and does not believe that the employees were fully informed as to the meaning of the waiver or their ability to refuse to sign such a form")[12]; and had their managers tell employees that the person who interviewed them in August 2014 was an official from the United States Department of Labor when in fact he was Defendants' expert, Id.; Ex. 20, Melecio Perez Dep. at 79:11-18. These actions demonstrate that Defendants were aware of the FLSA's minimum wage, overtime, and recordkeeping provisions but nonetheless chose to knowingly violate them. Even Defendants' expert William Cutler agrees that actions such as falsifying time records demonstrate willfulness. Ex. 11, Cutler Dep. at 232-33. In short, because Defendants knew their conduct violated the FLSA, their violations were willful and a three year limitations statute applies.[13]

---

[12] This action was taken with the involvement of Defendants' counsel, as it was Defendants' counsel who filed these waivers with the Court. Docs. 100-1 and 125.

[13] Plaintiff filed his complaint on October 22, 2012, thus Plaintiff is entitled to recover backwages from October 22, 2009 forward.

## VIII. Defendants Owe $2,225,392.62 Total In Backwages And Liquidated Damages

Among other things, an employer's payroll records, the backwage computations of a WHD compliance officer and his testimony regarding the method of his backwage computations can all be used to establish the number of unpaid hours an employee worked and the amount of unpaid compensation they are due "as a matter of just and reasonable inference." Donovan v. United Video, Inc., 725 F.2d 577, 584 (10th Cir. 1984). Once an employee establishes the amount of uncompensated work as a matter of "just and reasonable inference," the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Mt. Clemens, 328 U.S. at 687-88. If the employer fails to meet this burden, the court may award damages to the employee "even though the result be only approximate." Id. at 688.

Here, as explained below, Plaintiff used the most conservative figures to calculate the amount of hours worked by, and backwages owed to, employees for the different time periods at issue.

### A. Defendants' Owe $89,325.21 Under The Harvard Settlement Agreement

It is undisputed that minimum wage and overtime violations were found during the second Harvard investigation; Defendants agreed to settle the violations by paying the wages found due to employees at the Harvard restaurant for the time period of December 5, 2009 to August 6, 2011; and Defendants issued checks to employees per the settlement agreement, but eight employees cashed the checks and returned the money to Defendants. Additionally, Defendants failed to provide proof of payment for seven other employees. Thus, Defendants owe money to the eight employees who kicked back the money to Defendants and to the seven

employees for whom Defendants never provided proof of payment. In total, Defendants owe 15 employees **$89,325.21** in backwages under the Harvard Settlement Agreement. Ex. 5, Speer Dec. at 1 ¶ 5.

### B. Defendants Owe $386,887.82 Per Defendants' Expert William Cutler For The Period Of October 2009 to August 2011 At The Broken Arrow, Memorial And Owasso Restaurants

It is undisputed that overtime violations occurred at Defendants' three other restaurants—Broken Arrow, Memorial, Owasso—during time period of October 22, 2009 to August 6, 2011.[14] As stated above, during the second Harvard investigation Defendants admitted to WHI Saint-Hilaire that employees performed the same types of work and worked the same hours at all four of Defendants' restaurants. Ex. 3, Rule 30(b)(6) Dep. at 215-16; Ex. 6, Carlos Aguirre Dep. at 117-122, 139-143. During this investigation, WHI Saint-Hilaire found that back of the house employees and front of the house employees worked an average of 72 and 62 hours a week, respectively. Thus, Plaintiff could have used these same numbers to calculate the backwages for the October 22, 2009 to August 6, 2011 time period for employees working at Defendants three other restaurants. However, Plaintiff calculated backwages for these employees using the more conservative hour and salary averages determined by Defendants' expert William Cutler. At his deposition Cutler testified that overtime backwages would be owed pursuant to his methodology, but that he had not performed the calculations to determine the precise amount of backwages owed. Ex. 11, Cutler Dep. at 75-78, 157-58, 186-217, 230-31, 256-57, 264-65, 292-339, 340-348. However, Cutler testified that by simply using the information in his revised expert report

[14] Although there is evidence violations began in August 2009, applying a three-year limitations statute, Plaintiff could only seek backwages as far back as October 22, 2009, given that Plaintiff filed his complaint on October 22, 2012.

and following the methodology therein, the WHD could determine the amount of overtime backwages owed to Defendants' employees. Id.

For the time period of August 2009 to August 2011, Cutler found that back of the house employees and front of the house employees worked an average of 61.4 and 57.2 hours a week, respectively. Cutler also found that back of the house employees and front of the house employees earned an average weekly salary of $557.36 and $563.91, respectively. Ex. 4, Cutler Rep. at 15-16. Using Cutler's numbers, Plaintiff determined that for the time period of October 22, 2009 to August 6, 2011, Defendants owe the following backwages per restaurant location:

| | |
|---|---|
| Broken Arrow: | $138,013.90 to 57 employees, DOL 4872-73 |
| Memorial: | $126,404.12 to 52 employees, DOL 5184-85 |
| Owasso: | $122,469.80 to 44 employees, DOL 5368-69 |

Ex. 24, WH-56 and WH-55s for Broken Arrow, Memorial, Owasso (Oct. 2009-Aug. 2011) Using Cutler's Numbers.

In total, Defendants owe **$386,887.82** for the time period of October 22, 2009 to August 6, 2011 for the Broken Arrow, Memorial, and Owasso restaurants.

### C. Defendants Owe $636,483.28 Per The Testimony Of Defendants' Managers For The Period Of August 2011 To June 2014 At Defendants' Four Restaurants

To determine how much back of the house employees and front of the house employees earned during the August 6, 2011 to June 30, 2014 time period, Plaintiff reviewed Defendants' payroll records, including Defendants' Oklahoma Employment Security Commission reports. Ex. 5, Speer Declaration at 3 ¶ 11. Using these records, Plaintiff was able to determine each employee's regular and overtime pay rate. During their depositions in 2014, Defendants and Defendants' managers testified that back of the house employees and front of the house employees worked approximately 60 and 45 hours a week, respectively. Using Defendants' payroll records and the work hour averages testified to by Defendants' managers, Plaintiff

determined that for the time period of August 6, 2011 to June 30, 2014, Defendants owe the following backwages per restaurant location:

| | |
|---|---|
| Broken Arrow: | $120,437.93 to 50 employees, DOL 4982-83 |
| Harvard: | $162,407.62 to 71 employees, DOL 5530-32 |
| Memorial: | $176,485.46 to 61 employees, DOL 5305-06 |
| Owasso: | $177,152.27 to 55 employees, DOL 5473-74 |

Ex. 25, WH-56 and WH-55s for Broken Arrow, Harvard, Memorial, Owasso (Aug. 2011-Jun. 2014) Using Managers' Numbers

In total, Defendants owe **$636,483.28** for the time period of August 6, 2011 to June 30, 2014 for Defendants' four restaurants.

Adding the backwages owed under the Harvard settlement agreement to the backwages owed for the time period of October 22, 2009 to August 6, 2011 for Defendants' Broken Arrow, Memorial and Owasso restaurants to the backwages owed for time period of August 6, 2011 to June 30, 2014 for Defendants' four restaurants, Defendants owe **$1,112,696.31** in backwages. Additionally, as explained below, Defendants owe an equal amount in liquidated damages. Thus, Defendants owe, jointly and severally, a total of **$2,225,392.62**.

## IX. Plaintiff Is Entitled to Liquidated Damages Because The Affirmative Defense Of Good Faith Defense Was Waived And, In Any Event, Would Be Inapplicable

FLSA § 216(b) provides that if an employer violates the FLSA's minimum wage and overtime provisions, the employer is liable for liquidated damages in an amount equal to the employees' unpaid wages. 29 U.S.C. § 216(b). However, if the employer can prove that its violations occurred in "good faith" and it had "reasonable grounds for believing that its act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." Doty v. Elias, 733 F.2d 720, 725-26 (10th Cir.1984) (citing 29 U.S.C. § 260).

Here, Defendants failed to plead good faith in their Answer (Doc. 34) and thus waived the defense.[15] Good faith is an affirmative defense. See Herman v. Palo Grp. Foster Home, Inc., 183 F.3d 468, 470 (6th Cir. 1999) (stating that Section 260 "provides a limited affirmative defense to the liquidated-damages provision"); see also Tripp v. May, 189 F.2d 198, 199 (7th Cir. 1951); Brock v. Shirk, 833 F.2d 1326, 1329-30 (9th Cir. 1987); Nguyen v. Excel Corp., 197 F.3d 200, 203 (5th Cir. 1999). If affirmative defenses are not plead, "such defenses are deemed to have been waived and may not thereafter be considered as triable issues in [a] case." Radio Corp. of Am. V. Radio Station KYFM, Inc., 424 F.2d 14, 16 (10th Cir. 1970) (noting that it was "guided by some very definite and well settled legal principles" regarding affirmative defenses); see also Fed. R. Civ. P. 8(c).

In any event, even if Defendants had not waived it, Defendants would be unable to prove a good faith defense because their actions were not taken in good faith, nor did Defendants have reasonable grounds for believing that their actions were not in violation of the FLSA. In fact, the complete opposite is true. Defendants were well aware that their practice of paying employees a fixed weekly salary regardless of the number of hours employees worked was in violation of the FLSA. That is precisely why they lied to WHI Saint-Hilaire, instructed their employees to lie about the same, fabricated hours, and altered time records. In short, because Defendants knew that their conduct violated the FLSA, Plaintiff is entitled to liquidated damages.

---

[15] Defendants plead all 18 affirmative defenses listed under FRCP 8(c)(1), most of which are irrelevant in FLSA cases, e.g., statute of frauds. Furthermore, Plaintiff amended his complaint multiple times, each time affording Defendants an opportunity to amend their Answer under FRCP 15(a)(3). Defendants failed to do so, however, despite having been put on notice by the Court that many of their affirmative defenses were irrelevant. Doc. 125 at 18 n.9. ("Defendant asserts 18 affirmative defenses, including defenses such as contributory negligence, injury by fellow servant and laches, that appear to have nothing to do with the case.")

### X. Defendants Must Be Enjoined From Committing Future FLSA Violations

FLSA § 217 grants district courts jurisdiction to issue injunctions against violations of the FLSA's provisions, including its anti-retaliation provision. 29 U.S.C. §§ 215, 217. In determining whether to grant a prospective injunction, courts look at many factors, including the employer's previous and current conduct, and the reliability of its promises of future compliance. Metzler v. IBP, Inc., 127 F.3d 959, 963 (10th Cir. 1997) (citations omitted). "The necessary determination is that there exists some cognizable danger of recurrent violation[s]…." Id.

Here, Defendants have been investigated multiple times, with each investigation revealing a pattern of violations and deceit on the part of Defendants. Additionally, even after signing a settlement agreement and being sued by the United States Department of Labor, Defendants failed to come into compliance, as is demonstrated by their records and pay practices. Any promises of future compliance would be suspect given these facts. Furthermore, Defendants have not taken any extraordinary efforts to prevent violations; for example, instead of having employees verify that their time is correct on the Casio time reports and simply providing their accountant with these reports so that he can process payroll, Defendants create and provide the accountant with only a middle sheet created by Defendant Aguirre that often underreports the time worked by employees. Additionally, Defendants have taken actions to deter their employees from reporting violations of the FLSA, including having all their employees, most of whom are monolingual Spanish speakers, sign waivers purporting to waive all privileges with respect to any statement they may have given to the WHD, and also deceiving employees by telling them that their expert witness was a United States Department of Labor official. Because Defendants' previous and current conduct demonstrates a very real danger of

recurrent violations, and any promises of future compliance are suspect, the Court should enjoin Defendants from committing further violations of the FLSA.

## CONCLUSION

It is undisputed that Defendants made and kept inaccurate records, failed to pay their employees overtime pay for hours worked in excess of forty in a workweek, failed to pay their employees for all hours worked, lied, and fabricated time records. Additionally, Plaintiff established the number of unpaid hours worked by employees and the amount of unpaid compensation due as a matter of just and reasonable inference. As such, Plaintiff's motion for summary judgment or in the alternative for summary adjudication should be granted.

Respectfully Submitted,

M. PATRICIA SMITH
Solicitor of Labor

JAMES E. CULP
Regional Solicitor

MARGARET TERRY CRANFORD
Counsel for Wage and Hour

By:

s/ Demian Camacho

DEMIAN CAMACHO
CA Bar No. 286693
Email: camacho.demian@dol.gov

MATTHEW P. SALLUSTI
TX Bar No. 24013447
Email: sallusti.matthew@dol.gov

Attorneys for Plaintiff
RSOL No. 12-00629

U.S. Department of Labor
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, TX 75202
(972) 850-3100
(972) 850-3101-fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Bill V. Wilkinson
Wilkinson Law Firm
4812 East 81 Street #302
Tulsa, OK 74137
wilklaw@wilklaw.com

s/ Demian Camacho
DEMIAN CAMACHO
Trial Attorney

## CERTIFICATE OF CONFERENCE

I hereby certify that my co-counsel Matthew P. Sallusti made efforts to conference with and resolve the matters set forth in this motion with Defendants' Counsel Bill V. Wilkinson on February 4, 2015 and February 17, 2015 via written correspondence. The correspondence went unanswered. Accordingly, Plaintiff believes Defendants oppose this motion.

s/ Demian Camacho
DEMIAN CAMACHO
Attorney

<u>Perez v. El Tequila</u>

Appeal No. 16-5002

Defendants' Motion to File
Answer to Plaintiff's Third Amended
Complaint Out of Time

March 20, 2015
(ECF No. 196)

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,

Plaintiff,

v.

EL TEQUILA, LLC, and
CARLOS AGUIRRE, Individually,

Defendants.

Case No. 12-CV-00588-JED-PJC

**DEFENDANTS' MOTION TO FILE ANSWER TO
PLAINTIFF'S THIRD AMENDED COMPLAINT
OUT OF TIME**

COME NOW the Defendants by and through their Attorney of Record, Bill V. Wilkinson of the Wilkinson Law Firm, and in support of this Motion allege as follows;

1. Plaintiff filed its Third Amended Complaint on February 5, 2015 (DOC 165).

2. The Answer to the Third Amended Complaint was due to be filed on February 26, 2015.

3. Defendants' counsel failed to timely file the Answer because the Answer date was not properly docketed. Defense counsel did not realize the failure to timely file the Answer until March 19, 2015.

4. A comparison between the Plaintiff's Second Amended Complaint and the Third Amended Complaint reveals no substantive changes except that the name of the Secretary of Labor is changed from Hilda L. Solis to Thomas E. Perez. The answer which Defendants desire to

file, likewise, has no substantive changes from the answer to the Plaintiff's Second Amended Complaint.

5. Defendants request the Court to permit the Defendants to file the Answer out of time.

6. Granting this Motion will not affect the Scheduling Order entered by the Court and will not otherwise interfere with other dates or procedures scheduled in this civil case.

7. Defendants' Answer to the Third Amended Petition is attached as Exhibit 1.

8. Counsel for Defendants has communicated with counsel for the Plaintiff regarding the Motion. Counsel for Plaintiff is opposed to the Motion.

WHEREFORE, Defendants pray the Court to grant this Motion and permit the Defendants to file their Answer to the Plaintiff's Third Amended Complaint out of time.

Respectfully submitted,

WILKINSON LAW FIRM

By: s/ Bill Wilkinson

Bill V. Wilkinson, OBA No. 9621
4812 East 81 Street #302
Tulsa OK 74137
Tel: 918/663-2252; Fax: 918/663-2254
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew P. Sallusti
U.S. DEPARTMENT OF LABOR
525 Griffin Street #501
Dallas TX 75202
**ATTORNEY FOR PLAINTIFF**

s/ Bill Wilkinson
Bill V. Wilkinson

<u>Perez v. El Tequila</u>

Appeal No. 16-5002

Defendants' Proposed Answer to Plaintiff's Third Amended Complaint

March 20, 2015
(ECF No. 196-1)

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor,

Plaintiff,

v.

EL TEQUILA, LLC, and
CARLOS AGUIRRE, Individually,

Defendants.

Case No. 12-CV-00588-JED-PJC

## DEFENDANTS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

COME NOW the Defendants by and through their Attorney of Record, Bill V. Wilkinson of the Wilkinson Law Firm, and for their Answer to the Second Amended Complaint, allege and state as follows:

1. Defendants admit the allegations of paragraph I.
2. Defendants admit some, but not all of paragraph II (1). It is denied that El Tequila, LLC does business as El Tequila Mexican Restaurants. The remainder is admitted.
3. Defendants admit some but not all of paragraph II (2). It is denied that Carlos Aguirre is, and at all times was, the owner of El Tequila, LLC. The remainder is admitted.
4. It is denied that El Tequila, LLC is or has been an enterprise as alleged in III and IV.
5. Defendants admit some but not all of V(1). Defendants deny that all of the listed persons were employees and deny that the employees were not properly paid.



EXHIBIT 1

6. Defendants admit some but not all of V(2) and V(3). The Defendants deny that even after the installation and use of the Casio register/computer, the employees are not properly paid. The Defendants do not agree with the descriptions and/or designations attributed by the Plaintiff to groups of employees. Defendants deny they routinely work 6 days or more. Defendants deny that they failed to pay overtime premiums where applicable. Defendants deny the employees are entitled to overtime premiums. Defendants deny all tips are turned in to the cashier. Defendants deny the employees are paid below the statutory mandated minimum wage.

7. Defendants deny the allegations in V(3).

8. Defendants deny the allegations in VI (1).

9. Defendants deny the allegations in VI (2).

10. Defendants deny the allegations in VII (1).

11. Defendants deny the allegations in VII (2).

12. Defendants deny the allegations in VIII.

13. Defendants deny the allegations in IX (1).

14. Defendants deny the allegations in IX (2).

15. Defendants deny the allegations in IX (3).

16. Defendants deny the allegations in X.

17. Defendants deny the allegations in XI (1).

18. Defendants deny the allegations in XI (2).

19. Defendants deny the allegations in XI (3).

20. Defendants deny the allegations in XI (4).

21. Defendants deny the allegations in XI (5).

## AFFIRMATIVE DEFENSES

22. Accord and satisfaction.

23. Arbitration and award.

24. Assumption of risk.

25. Contributory negligence.

26. Duress.

27. Estoppel.

28. Failure of consideration.

29. Fraud.

30. Illegality.

31. Injury by fellow servant.

32. Laches.

33. License.

34. Payment.

35. Release.

36. *Res judicata.*

37. Statute of frauds.

38. Statute of limitations.

39. Waiver.

## CAPACITY OR AUTHORITY TO SUE

40. In accordance with Rule 9, FRCP, the Defendants deny that the Plaintiff had the capacity to sue.

WHEREFORE, Defendants pray that the Plaintiffs' Third Amended Complaint be dismissed and the claims against the Defendants be denied. Defendants should recover herein their costs and attorney fees.

**JURY TRIAL DEMANDED**

Respectfully submitted,

WILKINSON LAW FIRM

By: s/ Bill Wilkinson

Bill V. Wilkinson, OBA No. 9621
4812 East 81 Street #302
Tulsa OK 74137
Tel: 918/663-2252; Fax: 918/663-2254
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew P. Sallusti
U.S. DEPARTMENT OF LABOR
525 Griffin Street #501
Dallas TX 75202
ATTORNEY FOR PLAINTIFF

s/ Bill Wilkinson
Bill V. Wilkinson

<u>Perez v. El Tequila</u>

Appeal No. 16-5002

Defendants' Supplement to Defendants' Motion to File Answer to Plaintiff's Third Amended Complaint Out of Time

April 23, 2015
(ECF No. 207)

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>EL TEQUILA, LLC, and<br>CARLOS AGUIRRE, Individually,<br><br>Defendants. | Case No. 12-CV-00588-JED-PJC |

**DEFENDANTS' SUPPLEMENT TO
DEFENDANTS' MOTION TO FILE ANSWER TO
PLAINTIFF'S THIRD AMENDED COMPLAINT
OUT OF TIME**

COME NOW the Defendants by and through their Attorney of Record, Bill V. Wilkinson of the Wilkinson Law Firm, and in support of this Supplement allege as follows:

1. Defendants filed their Motion to File Answer to Plaintiff's Third Amended Complaint out of time. (DOC 196)
2. Defendants attached to their Motion the proposed Defendants' Answer as Exhibit 1.
3. Defendants file this Supplement to attach Defendants' Answer which now includes an affirmative defense for ***good faith and reasonable grounds***. (See Proposed Answer, ¶ 40.)

WHEREFORE, Defendants submit this Supplement to Defendants' Motion to File Answer to Plaintiff's Third Amended Complaint Out of Time.

Respectfully submitted,

WILKINSON LAW FIRM

By: s/ Bill Wilkinson
Bill V. Wilkinson, OBA No. 9621
4812 East 81 Street #302
Tulsa OK 74137
Tel: 918/663-2252; Fax: 918/663-2254
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of April 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew P. Sallusti
U.S. DEPARTMENT OF LABOR
525 Griffin Street #501
Dallas TX 75202
**ATTORNEY FOR PLAINTIFF**

s/ Bill Wilkinson
Bill V. Wilkinson

<u>Perez v. El Tequila</u>

Appeal No. 16-5002

Defendants' Proposed Supplemented Answer to Plaintiff's Third Amended Complaint

April 23, 2015
(ECF No. 207-1)

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,

Plaintiff,

v.

EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,

Defendants.

Case No. 12-CV-00588-JED-PJC

## DEFENDANTS' SUPPLEMENTED ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

COME NOW the Defendants by and through their Attorney of Record, Bill V. Wilkinson of the Wilkinson Law Firm, and for their Answer to the Second Amended Complaint, allege and state as follows:

1. Defendants admit the allegations of paragraph I.
2. Defendants admit some, but not all of paragraph II (1). It is denied that El Tequila, LLC does business as El Tequila Mexican Restaurants. The remainder is admitted.
3. Defendants admit some but not all of paragraph II (2). It is denied that Carlos Aguirre is, and at all times was, the owner of El Tequila, LLC. The remainder is admitted.
4. It is denied that El Tequila, LLC is or has been an enterprise as alleged in III and IV.
5. Defendants admit some but not all of V(1). Defendants deny that all of the listed persons were employees and deny that the employees were not properly paid.



EXHIBIT 1

6. Defendants admit some but not all of V(2) and V(3). The Defendants deny that even after the installation and use of the Casio register/computer, the employees are not properly paid. The Defendants do not agree with the descriptions and/or designations attributed by the Plaintiff to groups of employees. Defendants deny they routinely work 6 days or more. Defendants deny that they failed to pay overtime premiums where applicable. Defendants deny the employees are entitled to overtime premiums. Defendants deny all tips are turned in to the cashier. Defendants deny the employees are paid below the statutory mandated minimum wage.

7. Defendants deny the allegations in V(3).

8. Defendants deny the allegations in VI (1).

9. Defendants deny the allegations in VI (2).

10. Defendants deny the allegations in VII (1).

11. Defendants deny the allegations in VII (2).

12. Defendants deny the allegations in VIII.

13. Defendants deny the allegations in IX (1).

14. Defendants deny the allegations in IX (2).

15. Defendants deny the allegations in IX (3).

16. Defendants deny the allegations in X.

17. Defendants deny the allegations in XI (1).

18. Defendants deny the allegations in XI (2).

19. Defendants deny the allegations in XI (3).

20. Defendants deny the allegations in XI (4).

21. Defendants deny the allegations in XI (5).

## AFFIRMATIVE DEFENSES

22. Accord and satisfaction.

23. Arbitration and award.

24. Assumption of risk.

25. Contributory negligence.

26. Duress.

27. Estoppel.

28. Failure of consideration.

29. Fraud.

30. Illegality.

31. Injury by fellow servant.

32. Laches.

33. License.

34. Payment.

35. Release.

36. *Res judicata.*

37. Statute of frauds.

38. Statute of limitations.

39. Waiver.

40. Good faith and reasonable grounds.

## CAPACITY OR AUTHORITY TO SUE

41. In accordance with Rule 9, FRCP, the Defendants deny that the Plaintiff had the capacity to sue.

WHEREFORE, Defendants pray that the Plaintiffs' Third Amended Complaint be dismissed and the claims against the Defendants be denied. Defendants should recover herein their costs and attorney fees.

**JURY TRIAL DEMANDED**

Respectfully submitted,

WILKINSON LAW FIRM

By: s/ Bill Wilkinson
Bill V. Wilkinson, OBA No. 9621
4812 East 81 Street #302
Tulsa OK 74137
Tel: 918/663-2252; Fax: 918/663-2254
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of April 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Matthew P. Sallusti
U.S. DEPARTMENT OF LABOR
525 Griffin Street #501
Dallas TX 75202
**ATTORNEY FOR PLAINTIFF**

s/ Bill Wilkinson
Bill V. Wilkinson

# Perez v. El Tequila

## Appeal No. 16-5002

## Order

## July 10, 2015
## (ECF No. 230)

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-CV-588-JED-PJC** |
| **EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court is the United States Secretary of Labor's (the "Secretary") Motion in Limine Concerning Defendants' Employees' Immigration Status (the "Motion") (Doc. 177). The Secretary seeks an order precluding any testimony or evidence at trial concerning the immigration status of the defendants' employees. The Court denied the defendants' request to file an untimely response to the Motion, as the defendants' request—filed nearly a month after the response was due—failed to make a showing of excusable neglect. (Doc. 209 at 13-15).

This case concerns alleged violations of the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-262. Because Congress intended the FLSA to protect all workers from substandard wages and working conditions, regardless of their citizenship, the immigration status of the defendants' employees is irrelevant to the issues presented in this case. *Chellen v. John Pickle Co.*, 446 F. Supp. 2d 1247, 1276 (N.D. Okla. 2006) (compiling cases) ("[T]he definition of 'employee' under the FLSA imposes no limitation based on nationality or immigration status."); *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 939 (8th Cir. 2013) ("Because the workers were seeking redress only for work actually performed, the district court reasonably concluded any reference to the workers'

immigration status would be substantially more prejudicial than probative under Rule 403.”)) *cert. denied*, 134 S. Ct. 1515 (2014); *Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233, 1235 (D. Colo. 2012) (compiling cases) (“[T]he weight of authority clearly holds that a plaintiff’s immigration status is irrelevant in an FLSA action.”); *Campos v. Zopounidis*, No. 3:09-CV-1138 VLB, 2011 WL 4852491, at *1 (D. Conn. 2011) (compiling cases) (“Evidence of Plaintiff’s Immigration Status is inadmissible because it directly contradicts a large body of case law from numerous Circuits . . . clearly holding that all employees, regardless of immigration status, are protected by provisions of the FLSA.”); *Sanchez v. Creekstone Farms Premium Beef, LLC*, No. 11-4037-KGG, 2011 WL 5900959, at *3 (D. Kan. 2011) (barring discovery related to FLSA plaintiffs’ immigration status as prejudice to plaintiffs outweighed any potential relevance); *Colon v. Major Perry St. Corp.*, 987 F. Supp. 2d 451, 464 (S.D.N.Y. 2013) (“Discovery into a FLSA plaintiff’s immigration status is irrelevant and impermissible.”); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (affirming protective order “bar[ring] discovery into each plaintiff’s immigration status[, as allowing such discovery] would chill the plaintiffs’ willingness and ability to bring civil rights claims”).

**IT IS THEREFORE ORDERED** that the United States Secretary of Labor’s Motion in Limine Concerning Defendants’ Employees’ Immigration Status (Doc. 177) is **granted** and testimony or evidence at trial regarding the immigration status of the defendants’ employees is hereby precluded.

**SO ORDERED** this 10th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

# Perez v. El Tequila

## Appeal No. 16-5002

## Order

## July 10, 2015
## (ECF No. 232)

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-CV-588-JED-PJC** |
| **EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,** | ) | |
| **Defendants.** | ) | |

**ORDER**

The defendants' pretrial disclosures rehearse the requirements of Rule 26(a)(3)(A)(iii)—each party must provide "an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises"—and then, rather than comply with the rule, state simply that "The Preliminary Witness and Exhibit List has been exchanged." (Doc. 228). This is obviously and unacceptably insufficient to meet the requirements of the rule, and does not adequately apprise the Secretary or the Court of what can be expected at trial. The defendants are directed to submit narrowed and focused disclosures in accordance with the rule and standard practice no later than July 27, 2015, or run the risk of waiving their opportunity to offer any evidence at trial that should have been disclosed under Rule 26(a)(3)(A)(iii).

**SO ORDERED** this 10th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

# Perez v. El Tequila

Appeal No. 16-5002

Plaintiff's Notice of Revised Backwages Owed and to be Awarded

July 14, 2015
(ECF No. 238)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,<br><br>Defendants. | ) | CIVIL ACTION NO.<br>12-CV-588-JED-PJC |

**PLAINTIFF'S NOTICE OF REVISED BACKWAGES OWED AND TO BE AWARDED**

Comes now the Plaintiff, Secretary of Labor, United States Department of Labor ("Plaintiff"), and pursuant to the Court's July 10, 2015 Opinion and Order (DOC #233) files this Notice of Revised Backwages Owed and Awarded.

On July 10, 2015, the Court granted Plaintiff's Motion and Brief for Summary Judgment (DOCS #190 and 191). See July 10, 2015 Opinion and Order (DOC #233). In that Opinion and Order (DOC #233), the Court accepted Plaintiff's backwage computation methodology and awarded Plaintiff both backwages and liquidated damages. See Id.

However, the Court noted that the precise amount of backwages and liquidated damages owed Defendants' employees and/or former employees would hinge on whether Plaintiff could prove at the August 2015 trial that Defendants' Fair Labor Standard Act ("FLSA") violations are willful.[1] See Id.

[1] The Court also noted that Plaintiff had not proved whether 7 employees actually were not paid pursuant to the signed Harvard WH-56 and signed Harvard Settlement Installment Agreement. See July 10, 2015 Opinion and Order (DOC #233). Plaintiff has chosen not to pursue any

As a result of the Court's July 10, 2015, Opinion and Order (DOC #233), Wage Hour Oklahoma City District Director Michael Speer has revised his backwage calculations in the event Plaintiff fails to prove Defendants' FLSA violations are willful. See Ex. A, Speer Declaration.

Plaintiff now asks that the Court – pursuant to its July 10, 2015 Opinion and Order (DOC #233) – to take judicial notice of the following:

- If Plaintiff proves Defendants' FLSA violations are willful, then Defendants' employees and/or former employees are owed $2,137,627.44 in backwages and liquidated damages for the period of October 22, 2009 through June 30, 2014.

- If Plaintiff fails to prove that Defendants' FLSA violations are willful, then Defendants' employees and/or former employees are owed $1,726,401.00 in backwages and liquidated damages for the period of October 22, 2010 through June 30, 2014.[2]

See Ex. A, Speer Declaration.

In accordance with the Court's July 10, 2015 Opinion and Order (DOC #233), one of these two amounts must be awarded. See July 10, 2015 Opinion and Order (DOC #233).

WHEREFORE, Plaintiff respectfully files this Notice of Revised Backwages Owed and to be Awarded and asks that the Court take notice of the issues outlined in this pleading.

---

backwages and liquidated damages possibly owed these 7 employees. As a result, Wage Hour Oklahoma City District Director Michael Speer has slightly modified his backwage calculations for the period of October 22, 2009 through June 30, 2014. See Ex. A, Speer Declaration.

[2] Plaintiff will provide the updated WH-55 and WH-56 Forms that cover the period of October 22, 2010 through August 6, 2011 upon the Court's request.

Respectfully Submitted,

M. PATRICIA SMITH
Solicitor of Labor

JAMES E. CULP
Regional Solicitor

MARGARET TERRY CRANFORD
Counsel for Wage and Hour

By:

s/ Matthew P. Sallusti
MATTHEW P. SALLUSTI
TX Bar No. 24013447
Email: sallusti.matthew@dol.gov

DEMIAN CAMACHO
CA Bar No. 286693
Email: camacho.demian@dol.gov
Attorneys for Plaintiff
RSOL No. 12-00629

U.S. Department of Labor
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, TX 75202
(972) 850-3100
(972) 850-3101-fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Bill V. Wilkinson
Wilkinson Law Firm
4812 East 81 Street #302
Tulsa, OK 74137
wilklaw@wilklaw.com

s/ Matthew P. Sallusti
MATTHEW P. SALLUSTI
Senior Trial Attorney

<u>Perez v. El Tequila</u>

Appeal No. 16-5002

Declaration of Michael D. Speer

July 14, 2015

(ECF No. 238-1)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 12-CV-588-JED-PJC |
| EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually, | ) | |
| Defendants. | ) | |

**DECLARATION OF MICHAEL D. SPEER**

1. My name is Michael D. Speer. I am the District Director for the Oklahoma City District Office, which includes the Tulsa Area Office, of the Wage and Hour Division, United States Department of Labor. My business address is 215 Dean A. McGee Avenue, Room 318, Oklahoma City, Oklahoma 73102.

2. I am over the age of 18 years and am competent to make this Declaration.

3. It is within the regular course of my business activities as a Department of Labor Wage Hour employee that I perform back wage calculations and/or revise back wage calculations that have been performed by another Department of Labor Wage Hour employee.

4. This Declaration specifically incorporates my March 18, 2015 Declaration that was filed as an Exhibit to Plaintiff's Motion and Brief for Summary Judgment (DOCS #190 and 191). I submit this Declaration in accordance with the Court's July 10, 2015 Opinion and Order (DOC #233), which granted in part Plaintiff's Motion and Brief for Summary Judgment (DOCS #190 and 191).

5. Based on my review of the Court's July 10, 2015 Opinion and Order (DOC #233), the Court has ruled that only two (2) issues remain to be tried: (1) whether Defendants' minimum wage, overtime and record-keeping violations of the Fair Labor Standards Act ("FLSA") are willful and (2) whether Defendants failed to pay 7 employees in accordance with the signed Harvard WH-56 and signed Harvard Settlement Installment Agreement.

6. With regard to the second issue, Plaintiff has decided not to pursue any further backwages and liquidated damages potentially owed those 7 employees. As a result of this decision, Plaintiff's backwage and liquidated damage calculation for period of October 22, 2009 through June 30, 2014 has slightly decreased. Accordingly, if Plaintiff proves at the August 2015 trial that Defendants' FLSA violations are willful,



EXHIBIT
A

Defendants will owe $2,137,627.44 to their employees and former employees.

7. This $2,137,627.44 amount includes all backwages and liquidated damages owed to Defendants' employees for the period of October 22, 2009 through June 30, 2014, and also includes $45,442.62 that the Court awarded to the 8 employees Defendants admitted returned the backwages (as well as an equal amount in liquidated damages) received as a result of the signed Harvard WH-56 and signed Harvard Settlement Installment Agreement. These figures are completely consistent with the Court's July 10, 2015 Opinion and Order (DOC #233).

8. If the Court or jury finds at the August 2015 trial that Defendants' FLSA violations are not willful, then Plaintiff can only recover backwages and liquidated damages for the period of October 22, 2010 through June 30, 2014. Accordingly, I have removed the year of October 22, 2009 through October 21, 2010 in the event that happens. Therefore, if Plaintiff fails to prove that Defendants' violations are willful at the August 2015 trial, Defendants will owe $1,726,401.00 to their employees and former employees. These figures are completely consistent with the Court's July 10, 2015 Opinion and Order (DOC #233).

9. Based on the Court's July 10, 2015 Opinion and Order (DOC #233) and Plaintiff's decision not to pursue backwages owed 7 employees for whom Defendants failed to provide proof of payment as a result of the signed Harvard WH-56 and signed Harvard Settlement Installment Agreement, the figures outlined above are the only two (2) possible amounts that could be owed Defendants' employees and former employees, i.e., Defendants must pay either $1,726,401.00 (if Plaintiff does not prove willful) or $2,137,627.44 (if Plaintiff does prove willful).

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on July 14, 2015.

MICHAEL D. SPEER
Oklahoma City Wage Hour District Director

# Perez v. El Tequila

## Appeal No. 16-5002

## Order

## July 20, 2015
## (ECF No. 254)

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-CV-588-JED-PJC** |
| **EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,** | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court are the United States Secretary of Labor's Motion in Limine Concerning any Press Release Issued (Doc. 178), Motion in Limine Concerning Malicious Prosecution and/or Similar Unsupportable Allegations with Regard to Plaintiff's Investigation and/or Litigation of this Matter (Doc. 179), Motion in Limine Concerning any Time Records not Produced from October 22, 2009 Through December 2011 (Doc. 181), Motion in Limine Concerning Discretionary Bonuses for Non-Exempt Employees (Doc. 187), and Motion to Strike Defendants' Affirmative Defenses (Doc. 188).

### BACKGROUND

This case concerns alleged violations of the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-262. On July 10, 2015, the Court granted the United States Secretary of Labor's (the "Secretary") summary judgment motion as to all issues save two: (1) whether the defendants' violations of the FLSA

were willful and (2) whether the defendants failed to pay seven employees in accordance with a settlement agreement with the Department of Labor. (Doc. 233).[1]

## DISCUSSION

### I. Motions in Limine

The Secretary has filed four motions in limine which seek rulings precluding the introduction of testimony or evidence on the following issues: (1) press releases, (2) claims of malicious prosecution, (3) unproduced time records, and (4) discretionary bonuses. Each is addressed in turn.

#### a. General Considerations on Motions in Limine

Although the Federal Rules do not specifically authorize motions in limine, courts have long recognized the potential utility of pretrial rulings under the inherent powers of the district courts to manage the course of trial proceedings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co*., 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted). While pretrial limine rulings can save time and avoid interruptions at trial, a court is almost always better situated during the actual trial to determine the probative value of evidence. *See id.* (citation omitted). For that reason, courts are often reluctant to enter pretrial rulings which broadly exclude evidence, unless it is clear that the evidence will be inadmissible on all potential grounds. *See Hawthorne Partners v. AT&T Tech.*,

---

[1] The Secretary has indicated that he intends to litigate the first issue only. (Doc. 238 at 1 n.1). As a result, only the issue of willfulness remains before the Court.

*Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.").

b. Press Releases

The Secretary and the defendants have each issued press releases in this case. The Secretary's press release, issued October 22, 2012, described the basic contours of the suit against the defendants. (Doc. 178-1). The defendants issued their own press release on October 25, 2012, countering the Secretary's allegations and stating that the defendants had complied and would continue to comply with the Department of Labor's investigation. (Doc. 178-2). In addition, the defendants' press release argued that the "clear purpose [of the Secretary's press release] is to prejudice the public and prevent a fair trial." (*Id.*).

The Secretary argues that both press releases are irrelevant to the issues presented in this case, and on that basis asks the Court to preclude at trial any testimony or evidence regarding them. The defendants were denied leave to file an untimely opposition to the motion in limine for failure to show excusable neglect, and accordingly do not respond. (*See* Doc. 209 at 13-15).

The Court agrees that the press releases have no bearing on the sole issue remaining for trial—*i.e.*, willfulness. (*See* Docs. 233, 238 at 1 n.1). Accordingly, the Secretary's motion in limine is **granted** and testimony and evidence relating to press releases issued by the Secretary or the defendants are hereby precluded at trial.

c. Malicious Prosecution

The Secretary points to the defendants' claims that the Secretary "has acted 'unprofessionally,' been motivated by 'revenge and retribution,' been 'biased,' engaged in 'witch-hunts,' and played a game of 'hide and seek' in bringing this case in what Defendants

called ‘literally a life or death matter,’” and other similarly inflammatory remarks, and argues that the Court should “preclude any comments by Defendants of similar ilk because they are not properly before the Court and because they are completely and utterly unfounded and unsupportable.” (Doc. 179 at 2 (citations and alterations omitted)). The defendants were denied leave to file an untimely opposition to the motion for failure to show excusable neglect, and accordingly do not respond. (*See* Doc. 209 at 13-15).

The Court agrees that the defendants have made no claim of malicious prosecution, and that they could not make out such a claim. The Court further agrees that the defendants’ above-quoted accusations border on the ridiculous. Nevertheless, the Court **denies** the motion as overbroad. In doing so, the Court emphasizes that at trial it will not tolerate irrelevant accusations or other inflammatory language at all similar to that quoted here, and will grant objections to such comments freely.

d. Unproduced Time Records

The Secretary argues that the defendants “should be precluded from introducing any time records that have not already been produced in this matter,” and seeks specifically to preclude “any evidence concerning any time records not produced by January 9, 2015 for the time period prior to January 1, 2012.” (Doc. 181 at 2). The Secretary details the types of records he has requested from the defendants and the times he has requested them, and worries the defendants might “‘miraculous’ [sic] find time documentation that has been sought by Plaintiff’s [sic] for almost a year.” (*Id.* 181 at 9). The defendants were denied leave to file an untimely opposition to the motion for failure to show excusable neglect, and accordingly do not respond. (*See* Doc. 209 at 13-15).

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Accordingly, the Secretary's motion is **granted**.

e. Discretionary Bonuses

The Secretary argues that the defendants should be precluded from submitting any testimony or evidence concerning the payment of discretionary bonuses to non-exempt employees. (Doc. 187). The defendants raised the discretionary bonus issue as a way of objecting to the Secretary's calculation of back pay owed to the defendants' employees. The Court's Summary Judgment Order, which granted the Secretary summary judgment with respect to, among other issues, his back pay calculations (Doc. 233), has rendered this motion **moot**.

II. Motion to Strike Defendants' Affirmative Defenses

The defendants' Answer lists every affirmative defense included in Federal Rule of Civil Procedure 8(c)'s nonexhaustive list of affirmative defenses, and adds a claim that the Secretary lacks the capacity to sue. (Doc. 34). The Secretary argues that the Court should strike each affirmative defense in this laundry list, as the defenses are not applicable to the issues raised in the case and the defendants have offered no factual basis or evidence to support them. (Doc. 188).

The defendants filed a one-page Response, arguing simply that the Motion to Strike was untimely. (Doc. 211). The defendants cite no authority. Although the defendants are correct that more than a year and a half passed between the filing of their Answer and the Secretary's Motion to Strike, their argument is misleading as it neglects to mention that the Secretary sought and was granted leave to file a Third Amended Complaint a little over a month before the

Secretary filed his Motion to Strike. (*See* Docs. 164 and 165). The filing of the Third Amended Complaint gave the defendants an opportunity to file an amended answer—one which could have asserted pertinent affirmative defenses, rather than Rule 8(c)'s laundry list. The defendants did not avail themselves of this opportunity (*see* Doc. 209 at 1-2, 5-12), and the Secretary moved to strike the affirmative defenses as plead.

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike affirmative defenses pursuant to Rule 12(f) "are disfavored and are infrequently granted." *United States v. Hardage*, 116 F.R.D. 460, 463 (W.D.Okla.1987); 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1381 (3d ed.) (collecting cases). A motion to strike "seeks a 'drastic remedy' and must not be granted unless, as a matter of law, the defense cannot succeed under any circumstances" or unless it is clear that the affirmative defenses clearly have no bearing upon the subject matter of the litigation or the defenses are clearly insufficient as a matter of law. *Hardage*, 116 F.R.D. at 463–64 (citations omitted); *see also Fed. Dep. Ins. Corp. v. Niver*, 685 F.Supp. 766, 768 (D.Kan.1987) ("A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.").

Courts review with scrutiny motions to strike that seek the determination of disputed and substantial questions of law, particularly when no significant discovery has occurred in the case. *Hardage*, 116 F.R.D. at 463. "A defense should not be stricken 'if there is any real doubt' about its validity, and 'the benefit of the doubt should be given to the pleader.'" *Sender v. Mann*, 423 F.Supp.2d 1155, 1163–64 (D.Colo.2006) (quoting *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill.1982)). The reason for this rule is that "the very possibility of waiver makes it

important (and certainly prudent) to plead all appropriate affirmative defenses," and "the cautious pleader is fully justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials." *Bobbitt*, 532 F.Supp. at 736.

Rule 8 requires that a defendant "state in short and plain terms its defenses to each claim asserted against it," and the rule lists numerous, specific affirmative defenses which must be set forth if the defendant claims them to be applicable. Fed.R.Civ.P. 8(b)(1)(A), (c). In addition, a "party may state as many separate claims or defenses as it has, regardless of consistency." Fed.R.Civ.P. 8(d)(3).

Courts are split as to whether the pleading requirements for complaints, which are set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to statements of affirmative defenses. *See, e.g., Falley v. Friends Univ.*, 787 F.Supp.2d 1255, 1256-57 (D.Kan.2011) (holding that those standards do *not* apply to affirmative defenses and collecting cases disagreeing as to whether *Twombly*/*Iqbal* standards govern affirmative defenses); *Constr. Ind. Laborers Pension Fund v. Explosive Contractors, Inc.*, 2013 WL 3984371 (D.Kan. 2013) (noting disagreement between judges of the District of Kansas as to whether *Twombly*/*Iqbal* standards apply to defenses and holding that those standards *do* apply to affirmative defenses); *Holdbrook v. Saia Motor Freight Line, LLC.*, 2010 WL 865380, *2 (D.Colo. 2010) (noting disagreement amongst district courts and concluding best approach is that *Twombly*/*Iqbal* standards do not apply to affirmative defenses); *see also Pezzuto v. Premier Hospitality Mgmt., Inc.*, 2010 WL 2788163 (E.D.Okla. 2010) (noting difference of opinion on the issue and denying motion to strike without deciding the issue, because the plain and short

statement of defenses provided sufficient notice when read in conjunction with the complaint); *Schlottman v. Unit Drilling Co., LLC*, 2009 WL 1764855 (W.D. Okla. 2009) (noting that answers are often necessarily stated without factual detail because defendants are responding to plain statements of claim in a complaint; denying a motion to strike defenses).

The Court need not and does not reach the issue of whether the *Twombly/Iqbal* standards apply to affirmative defenses. Rule 8(c) exists to ensure that a plaintiff is put on notice well in advance of trial of a defendant's potential defenses. *Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (citing *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir. 1992)). Here, the defendants' laundry list is hopelessly insufficient to meet this purpose. Copying and pasting all the defenses enumerated in the rule—especially where many of the defenses obviously have no application whatsoever to the case—is tantamount to stating no more than "the defendant has affirmative defenses." In neither case is the plaintiff put on notice of the actual defenses the defendant might have. For the rule to serve any purpose, more is required.

If the defendants had at any time, in the face of objections from the Secretary or otherwise, sought to supplement their list, eliminate clearly superfluous defenses like injury by fellow servant and contributory negligence, or provide some support for one of their affirmative defenses, the Court likely would have allowed even the most conclusory assertion of a defense. Indeed, the Court would likely have been open to the barest attempt on the part of the defendants to explain their defenses in their Response to the Secretary's Motion to Strike. Instead, however, the defendants submitted a one-page Response raising a spurious claim of untimeliness. The Court is left to assume that the defendants themselves do not believe any of their defenses are applicable to the case at hand, and have asserted them and resisted the attempt to strike them for

no purpose other than to rankle, lighting one more unnecessary fire for the Secretary—and now the Court—to extinguish.

Because discovery is complete, few disputed issues survived the Court's Summary Judgment Order, and the defendants have made no attempt to show what bearing their list of defenses might have on what remains of the litigation, the Secretary's Motion to Strike is **granted**.

**IT IS THEREFORE ORDERED** that the Secretary's Motions in Limine Concerning any Press Release Issued (Doc. 178) and Concerning any Time Records not Produced from October 22, 2009 Through December 2011 (Doc. 181) are **granted**; Concerning Malicious Prosecution and/or Similar Unsupportable Allegations with Regard to Plaintiff's Investigation and/or Litigation of this Matter (Doc. 179) is **denied**; and Concerning Discretionary Bonuses for Non-Exempt Employees (Doc. 187) is **moot**.

**IT IS FURTHER ORDERED** that the Secretary's Motion to Strike Defendants' Affirmative Defenses (Doc. 188) is **granted**.

**SO ORDERED** this 20th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

# Perez v. El Tequila

## Appeal No. 16-5002

## Order

## July 20, 2015
## (ECF No. 255)

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-CV-588-JED-PJC** |
| **EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court is the United States Secretary of Labor's Second Motion for Leave to File Proposed Pretrial Order Unilaterally (Doc. 244). Citing the defendants' refusal to participate in good faith to jointly draft and submit an agreed proposed pretrial order, the Secretary seeks permission to file a proposed pretrial order unilaterally.

As the Secretary's motion makes clear, this is the second time he has moved for leave to submit a proposed pretrial order unilaterally. He submitted his first motion, on substantially the same grounds, on July 10, 2015, three days before the agreed proposed order was due. (Doc. 231). There, the Secretary recounted the difficulties the Department of Labor experienced in seeking the defendants' participation in the drafting of a proposed pretrial order. In the Secretary's telling, the defendants appear to have been generally unavailable and, once located, uncompromising.

As the Court at the time had not yet ruled on the Secretary's summary judgment motion, the defendants were not entirely without grounds to resist the Secretary's attempt to declare certain issues resolved for the purposes of an agreed-to proposed pretrial order. The Secretary represents that the defendants thus argued for the inclusion in the order of issues that, in the

Secretary's estimation, had already been determined. Later the same day, however, the Court granted summary judgment to the Secretary in nearly all respects. (Doc. 233). Believing that the Summary Judgment Order, which greatly narrowed the scope of the case, would eliminate many points of contention, the Court denied, for the time being, the Secretary's motion and extended the deadline to submit an agreed proposed pretrial order by one week, or until July 20, 2015. (Doc. 234).

On July 15, 2015, the defendants filed a motion raising again issues decided by the Court's Summary Judgment Order. (Doc. 242, 243). The following day, the Secretary filed the present motion, attesting to the defendants' continued intransigence, including with respect to issues decided on summary judgment. (Doc. 244). The Summary Judgment Order rendered untenable the defendants' position that the imposition of liquidated damages, the calculation of back wages, and the affirmative defense of good faith and reasonable grounds, among other issues, were still in dispute. Similarly unfounded is the defendants' claim, as relayed to the Court by the defendants, that the Secretary is required to prove all nine factual claims made in his summary judgment motion regarding willfulness.

Accordingly, the Court denied the defendants' motion to re-litigate decided issues and directed the parties to make a final attempt at consensus. (Doc. 247). The Court warned that if the parties failed to do so by 5:00 p.m. on Monday, July 20, 2015, it would grant the Secretary's motion to file a proposed pretrial order unilaterally. (*Id.*). Around half an hour before that deadline, the defendants filed their first response to either of the Secretary's motions. (Doc. 253). As foretold by the Secretary, the defendants attached proposed pretrial order includes, for example, issues of fact on which the Court has already ruled and which will not be heard at trial—including whether the Secretary has established the amount of damages, whether the

defendants have violated the FLSA, and whether the Department of Labor's investigation was proper. Nevertheless, as the defendants argue, the Secretary should include the defendants' proposals in the proposed pretrial order. Where the defendants, in the Secretary's view, claim that black is white or that there is no moon, the Secretary may indicate his objection.

**IT IS THEREFORE ORDERED** that the United States Secretary of Labor's Second Motion for Leave to File Proposed Pretrial Order Unilaterally (Doc. 244) is **denied** and the Secretary is **directed** to file, by July 21, 2015, a proposed pretrial order incorporating the defendants' suggestions, however misguided, and indicating his objections to them as necessary.

**SO ORDERED** this 20th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

# Perez v. El Tequila

# Appeal No. 16-5002

# Order

# July 24, 2015
# (ECF No. 259)

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 12-CV-588-JED-PJC** |
| **EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court are the United States Secretary of Labor's Motion to Exclude Certain Testimony and Expert Witness Classification of Victor Kubli (Doc. 176) and the defendants' Motion in Limine and Supporting Brief (Doc. 197).

I. Background

This case concerns violations of the minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-262, by the defendants, who own and operate four Mexican-style restaurants in and around Tulsa, Oklahoma. In 2011, the Department of Labor (the "DOL") completed two investigations of alleged labor law violations at one of the defendants' restaurants. (Doc. 191-4 at 4-5). Both investigations were initiated as the result of employee complaints. (*Id.*). The second investigation found the defendants had violated the minimum wage, overtime, and recordkeeping provisions of the FLSA.

As a result of the second investigation, the defendants signed a Form WH-56, which listed employees owed back wages and the amounts owed, and a settlement installment agreement, by which the defendants agreed to pay their employees back wages and to comply

with the FLSA going forward (jointly the "Settlement Agreement"). (Doc. 199-1). The investigation resolved by the Settlement Agreement covered the defendants' operations from August 8, 2009 to August 6, 2011, and found violations from December 5, 2009 to August 6, 2011. (Doc. 199-1; *see also* Doc. 191-4 at 5).

The defendants did not comply with the Settlement Agreement, either by completing payments of back wages owed to their employees or by bringing their restaurants into compliance with the FLSA. On October 22, 2012, the United States Secretary of Labor (the "Secretary") sued the defendants, alleging violations of the FLSA at all four of their restaurants. (Doc. 2). The FLSA provides different statutes of limitations depending on the state of mind of the defendants. Because the Secretary alleged that the defendants committed these violations willfully, he sought to have the Court apply a three-year—rather than a two-year—statute of limitations. According to the Secretary, then, the defendants could be held accountable for violations as far back as October 22, 2009.

On July 10, 2015, the Court granted the Secretary summary judgment as to all issues save two: (1) whether the defendants' violations of the FLSA were willful and (2) whether the defendants failed to pay seven employees in accordance with a settlement agreement with the DOL. (Doc. 233). As the Secretary has indicated that he intends to litigate the first issue only, (Doc. 238 at 1 n.1), the sole issue remaining before the Court is whether the defendants' FLSA violations were committed willfully. Whether the defendants must pay back wages owed as a result of their violations beginning two years or three years before the Secretary brought suit depends on the answer to that question.[1] (*See* Doc. 238).

[1] More precisely, the Secretary seeks back wages for violations committed during two periods: October 22, 2009 to August 6, 2011 and August 6, 2011 to June 30, 2014 (violations continued after the Secretary brought suit). Only the first period remains to be fixed. If the factfinder finds

II. The Secretary's *Daubert* Motion

The defendants have designated their accountant and payroll processor, Victor Kubli, as an expert, a designation to which the Secretary objects on a number of grounds. (Doc. 176). Because Kubli is clearly not qualified to testify as an expert, the Court will focus on the more robust of the Secretary's arguments.

Federal Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > **(b)** the testimony is based on sufficient facts or data;
> > **(c)** the testimony is the product of reliable principles and methods; and
> > **(d)** the expert has reliably applied the principles and methods to the facts of the case.

To determine whether to admit an expert opinion, the Court must perform a two-step analysis. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, the Court must decide whether a purported expert is qualified "by knowledge, skill, experience, training, or education" to render an expert opinion. *Id.*; Fed. R. Evid. 702. Second, the Court must judge the reliability of the testimony, including the validity of the reasoning or methodology underlying the testimony. *Id.*; *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)).

---

that violations the defendants committed from October 22, 2009 to October 22, 2010 were not willful, the first period will be truncated by one year, and the defendants will owe back wages for their violations from October 22, 2010 to August 6, 2011. In the wake of summary judgment, there is no debating the fact that the defendants must pay back wages for the violations they committed during the second period in full, from August 6, 2011 to June 30, 2014.

The Secretary argues that Kubli fails at each step. On the first step, the Secretary emphasizes that Kubli has no technical or specialized knowledge concerning the FLSA, has never worked for the DOL or calculated back wages owed due to violations of the FLSA, and has no educational or business experience with the FLSA. (Doc. 176 at 8-14). Kubli's would-be expert testimony similarly fails the second step, the Secretary continues, as it is not based on sufficient facts or data, given that Kubli gained his purported expertise by reading a DOL-issued pamphlet regarding discretionary bonuses. (*Id.* at 9). Finally, the Secretary claims that Kubli has failed to demonstrate that he has reliably applied his principles and methods to the facts of this case, as the pamphlet on which he bases his opinions was never produced in discovery and all he offered at his deposition was a recitation of the definition of a discretionary bonus. (*Id.*). In short, the Secretary argues that Kubli is the defendants' accountant and processes their payroll, and as a result may testify concerning his accounting and payroll practices and how those practices affected the defendants, but nothing more. (*Id.* at 10).

In response, the defendants argue that work experience with the DOL is not required (a point the Secretary is unlikely to contest), Kubli has a long-term relationship with the defendants, has been directly involved in the defendants' payroll policies and practices, and testified at his deposition that he believes himself to be an expert[2] and that he believes that the Secretary should

---

[2] Although not convincingly so:

Q. . . . Do you have an expert opinion?
A. About what?
. . .
Q. What is your expert opinion?
A. Whatever you guys ask me. . . . I guess whatever you ask me, I have to answer.
Q. Okay. But why does that make you an expert?
A. I do not know.
Q. Do you have an expert opinion?
A. An expert opinion?

have included discretionary bonuses in his calculation of wages owed to the defendants' employees. (Doc. 200 at 7-13).

No evidence or argument presented by the defendants has come close to convincing the Court that Kubli is an expert or that he should be permitted to present expert testimony. Reading an undisclosed pamphlet issued by the DOL does not an expert make. Kubli—for whom the defendants have refused to file an expert report—appears to have no specialized knowledge that would help a trier of fact, and the defendants have pointed to no facts or data purportedly underlying his opinion. To the extent he has principles or methods, he has not shown them to be reliable or that he has reliably applied them to the facts of this case.

To a large degree these points are moot. When the defendants filed their motion they believed the discretionary bonus issue was central to the case, and the case they made for their expert focused on discretionary bonuses. (Doc. 200 at 8-10). In the defendants' view, the Secretary's failure to account for discretionary bonuses led to an inflated back-wages calculation. That issue, however, was decided on summary judgment, (Doc. 233), and therefore Kubli, even if he qualified as an expert—which he does not—would not be allowed to testify in this respect.

Nevertheless, a final word is necessary, as a number of recent filings suggest that the defendants' misunderstand what issues remain for trial. (*See* Docs. 242, 243, 251, 253).[3] The

---

Q. Yes.
A. About what?
Q. Anything in this case? . . .
A. Well, probably the only thing I can think of right off the top of my head, I understand that when you guys were computing what you said was overtime . . . you had included discretionary bonuses. And I don't believe that's proper.

(Doc. 176-6 at 79:17-18; 81:13 – 82:7).

[3] Unfortunately, the Court has reason to doubt that the defendants' disregard for its orders results from misunderstanding rather than obstinacy and guile. The boundaries of this case have been stated clearly and often. To the extent similar apparent misunderstandings occur going forward,

defendants final witness list—their most recent filing concerning Kubli—states that Kubli will testify as an expert to the following matters:

> He will testify he is a CPA and performs the payroll and other financial services for his clients which are numerous and include at least 10 other restaurants. He will testify that he was closely involved in business discussions and decisions of the Defendants. He will acknowledge that the Defendants had confidence in him and relied on his advice. He will testify that he never informed the Defendants that they might be in violation of the law with regard to the employee payments and records. He will testify that he is an expert witness. He is knowledgeable about the FMLA. He is knowledgeable about and has opinions about the discretionary bonus. The DOL should have applied it here and his opinion is it would have made a very large impact on the calculations by the DOL regarding overtime wages.

(Doc. 251 at 2-3). To be as clear as possible, Kubli will be permitted to testify to the following, assuming its truthfulness: that he is a CPA, that he worked closely with the defendants as their accountant, that they relied on his advice, and that he did not inform them that that they might be in violation of the law. Kubli may *not* testify that the defendants had confidence in him, though of course the defendants may. He may not testify that he is an expert, as that is not for Kubli to decide. He may not represent himself to be an expert on the Family Medical Leave Act or, for that matter, the FLSA—the statute at issue in this case.

Finally and emphatically, Kubli may not offer testimony with respect to discretionary bonuses, as the defendants offer that evidence to challenge not the claim that they willfully violated the FLSA—the only undecided issue remaining—but instead to challenge the DOL's calculation of wages owed to the defendants' employees. That issue was determined on summary judgment, and further evidence at trial regarding decided issues, as should be obvious, will not be permitted.

---

the Court will presume counsel for the defendants is more knave than fool, and will not hesitate to correct misstatements of the case, exclude evidence unrelated to the issues at hand, and, if appropriate, impose sanctions.

III. The Defendants' Motion in Limine

The defendants, like the Secretary, seek to limit the expert testimony the Secretary might attempt to put into evidence. Additionally, their Motion in Limine asks the Court to prohibit the Secretary from admitting the Settlement Agreement entered into by the defendants and the DOL, as well as any reference to the immigration status of the defendants' representatives or employees.

*a. Expert Testimony*

The defendants seek to limit the ability of the Secretary's expert witnesses—Glenn Deal and Gary Leonhardt—to testify. Likely because the Court's Summary Judgment Order rendered testimony from these experts superfluous, it appears that the Secretary no longer intends to call either of them at trial. (*See* Doc. 252). However, for the avoidance of doubt the Court will briefly address the arguments raised by the defendants.

The defendants ask that the Court prohibit the Secretary from substituting a designated representative of either of his named experts for the experts themselves. The Court has already ruled on this issue, and accordingly finds it moot. (*See* Doc. 174 at 11 n.4).

The defendants next argue that the Court should limit the scope of testimony to be offered by Deal and Leonhardt to the simple statement, contained in the Secretary's Expert Report, that "many of the electronic time record weekly reports have been manually altered from the state in which they were originally entered." (Doc. 197 at 2-4). The defendants worry that Deal and Leonhardt will testify that the manual alterations were "somehow improper or demonstrated misconduct by the doctors [sic]," or that "the number or amount of manual edits made by the Defendants were excessive and greater than customarily made." (*Id.* at 3). The only reason offered by the defendants in favor of the requested restriction is that an expert should

not be allowed to "exceed the scope of the expert testimony as defined and described in the expert report." (Doc. 197 at 3). The Court has already rejected the argument that an expert report must "replicate every word that the expert might say from the stand." (Doc. 174 at 5). The argument is now rejected as moot.

*b. Form WH-56 and Settlement Installment Agreement*

The defendants next request that the Court limit testimony and evidence at trial regarding the Settlement Agreement negotiated between the DOL and the defendants.[4] (Doc. 197 at 5-9). They argue that (1) the settlement agreement is not relevant under Federal Rule of Evidence 401, (2) any probative value it might have is outweighed by the risk of unfair prejudice, confusion, and waste of time, and (3) the Agreement is a compromise inadmissible under Federal Rule of Evidence 408. (*Id.*).

Under Rule 401, evidence is relevant if "it has any tendency to make a fact ["of consequence in determining the action"] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Therefore, the Settlement Agreement is relevant if it has *any* tendency to make the willfulness of the defendants' FLSA violations more likely. On that standard, the Settlement Agreement is, without question, relevant.

The Settlement Agreement resolved an investigation that covered the defendants' operations from August 8, 2009 to August 6, 2011. The Agreement held the defendants liable for violations in a slightly narrower period, to wit from December 5, 2009 to August 6, 2011. (Doc. 199-1; *see also* Doc. 191-4 at 5; Doc. 191 at 28 (asserting that "defendants agreed to settle

[4] The Secretary points out that the defendants mention only the Settlement Installment Agreement and not the Form WH-56, which the defendants signed to signal their assent to the DOL's back-wages calculations. (Doc. 199 at 2 n.4). For the sake of simplicity, the Court will refer to these documents jointly as the "Settlement Agreement," and this Order should be read to apply to both.

the violations by paying the wages found due . . . for the time period of December 5, 2009 to August 6, 2011”)). Thus, the Settlement Agreement addressed violations of the FLSA that occurred, in part, during most of the period relevant for determining the statute of limitations, that is, October 22, 2009 to October 22, 2010.

Defendant Aguirre has admitted that, following and in spite of the Settlement Agreement, he accepted kickbacks from employees paid back-wages under the Agreement.[5] (Doc. 191-3 at 210:15 – 212:7). Aguirre's violation of the Agreement permissibly could be seen as evidence that Aguirre willfully violated the FLSA between October 22, 2009 and October 22, 2010. A factfinder could interpret the defendants' violation of the Agreement to suggest that they entered into the Agreement not because they realized their mistake and wished to be finished with the DOL and to move forward in compliance, but instead to feign compliance while working around the Agreement and the dictates of the FLSA which it sought to enforce. The argument is somewhat tenuous, and it is worth noting that it skirts the shoals of character evidence, but the relevance of the evidence is more than sufficient to clear the low bar set by Rule 401.

Of course relevancy is the first and lowest of several hurdles a piece of evidence must pass. Rule 403 permits the Court to “exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.” Under Rule 403, the Court must weigh the prejudicial effect of evidence of a settlement, or attempts at settlement, against the relevance of the evidence. *Id.* 1395-96. The exclusion of evidence under

[5] Not all employees were owed money for time worked during the relevant statutory period. However, the employees from whom Aguirre accepted kickbacks include Melecio Perez, Francisco Perez, Ramon Rodriguez, and Abel Torres Campos. (Doc. 191-3 at 211:10 – 212:5). For each of these employees, the Settlement Agreement covered a period beginning on December 5, 2009, and extending, in every case but one, beyond October 22, 2010.

the Rule is "an extraordinary remedy to be used sparingly." *Weir v. Fed. Ins. Co.*, 811 F.2d 1387, 1396 (10th Cir. 1987) (quoting *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985)).

There is a small danger of prejudice weighing against the Settlement Agreement's admission, as a jury might misunderstand the Agreement to embody a recognition and admission of intentional or otherwise willful violations on the part of the defendants. To be sure, the Agreement is not of immense probative value, and the Secretary has other varied and strong evidence of the defendants' willfulness at his disposal. (*See* 191 at 26-27). But any risk of prejudice is easily mitigated with an instruction to the jury regarding the many reasons, other than willfulness or even guilt, that parties enter into settlements. Accordingly, the Court finds that the potential prejudice evidence of the Settlement Agreement might cause does not outweigh its probative value.

The Settlement Agreement is relevant, and its relevance outweighs its potential prejudicial effect, but the defendants have raised one final hurdle. Rule 408 prohibits the admission of compromises "either to prove or disprove the validity or amount of a disputed claim"; for other purposes, however, such evidence may be admitted. Fed. R. Evid. 408.

The defendants' violations and the calculation of damages in this case were established on summary judgment. (Doc. 233). In other words, the validity and the amount of the disputed claim has already been determined. Thus, the evidence runs no risk of serving a purpose rendered impermissible by Rule 408. The effect of a finding of willfulness will be to extend the statute of limitations to cover a period for which violations and the calculation of damages are already established.

One arrives at the same result by considering what issues remain for trial, as opposed to what issues have been eliminated. Willfulness is the *only* remaining issue. A violation is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The Tenth Circuit has held that evidence related to a compromise legitimately falls under the "other purposes" exception to Rule 408 where it is used for the purpose of showing recklessness. *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987). The Secretary hopes to present evidence of the comprise to show at least a reckless disregard of the requirements of the FLSA. This use falls under the "other purposes" section of Rule 408, and thus Rule 408 imposes no bar to the Agreement's admission at trial.

*c. Immigration Status*

The defendants additionally request that the Court prohibit references to the immigration status of employees or representatives of the defendants. (Doc. 197 at 9-13). The Secretary notes that he moved for the very same relief a month before the defendants filed their motion. (*See* Doc. 177). The Court has ruled on that motion (Doc. 230), and thus finds the issue moot.

**IT IS THEREFORE ORDERED** that the United States Secretary of Labor's Motion to Exclude Certain Testimony and Expert Witness Classification of Victor Kubli (Doc. 176) is **granted**.

**IT IS FURTHER ORDERED** that the defendants' Motion in Limine and Supporting Brief (Doc. 197) is **denied**.

**SO ORDERED** this 24th day of July, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

Perez v. El Tequila

Appeal No. 16-5002

Plaintiff's Second Notice of Revised Backwages Owed and Awarded

January 5, 2016

(ECF No. 311)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,<br><br>Defendants. | CIVIL ACTION NO. 12-CV-588-JED-PJC |

**PLAINTIFF'S SECOND NOTICE OF REVISED BACKWAGES OWED AND AWARDED**

Comes now the Plaintiff, Secretary of Labor, United States Department of Labor ("Plaintiff") and, pursuant to the Court's July 10, 2015 Opinion and Order (DOC #233), December 22, 2015 Opinion and Order (DOC #307), and December 23, 2015 Minute Order (DOC #310), files this Second Notice of Revised Backwages Owed and Awarded.[1]

On July 10, 2015, the Court granted Plaintiff's Motion and Brief for Summary Judgment (DOCS #190 and 191). See July 10, 2015 Opinion and Order (DOC #233). In that July 10, 2015 Opinion and Order (DOC #233), the Court accepted Plaintiff's backwage computation methodology and awarded Plaintiff both backwages and liquidated damages. Id.

[1] The Court ordered that the Plaintiff file revised WH-55s and WH-56s for the October 22, 2009 to August 6, 2011 time period. See December 23, 2015 Minute Order (DOC #310). However, Plaintiff has already filed all the relevant WH-55s and WH-56s for all time periods. Because those documents are voluminous, Plaintiff incorporates them by reference, as opposed to refiling them. As explained (and cited) further below, the Court should have all the necessary documentation to support issuing a Final Order in the amounts outlined herein (again based on all the evidence previously filed and ruled on by the Court).

However, the Court noted that the precise amount of backwages and liquidated damages owed Defendants' employees would hinge on whether Plaintiff could prove at the August 2015 trial that Defendants' Fair Labor Standard Act ("FLSA") violations were willful.[2] Id.

On December 22, 2015, the Court entered its Opinion and Order (DOC #307) holding that Defendants' violations of the FLSA were willful as a matter of law, thereby extending the limitations statute from two to three years. See Court's December 22, 2015 Opinion and Order (DOC #307). The relevant WH-55s and WH-56s requested by the Court were submitted by Plaintiff as exhibits to Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194), along with the declaration of Wage Hour Oklahoma City District Director Michael Speer. These documents accurately reflect the amount of backwages and liquidated damages due to Defendants' employees.[3] Accordingly, Plaintiff incorporates by

---

[2] The Court also noted that Plaintiff failed to prove that seven of Defendants' employees were actually not paid pursuant to the signed Harvard WH-56 and Harvard Settlement Installment Agreement. See July 10, 2015 Opinion and Order (DOC #233). Plaintiff later chose to no longer pursue any backwages and liquidated damages allegedly owed to these seven employees. See Plaintiff's July 14, 2015 Notice of Revised Backwages Owed and Awarded (DOC #238). As a result, Wage Hour Oklahoma City District Director Michael Speer revised his Declaration to remove these seven employees, but continued to include the eight employees the Court awarded backwages to in the Court's July 10, 2015 Opinion and Order (DOC #233). See Ex. A, Speer Declaration in support of Plaintiff's July 14, 2015 Notice of Revised Backwages Owed and Awarded (DOC #238); see also Court's July 10, 2015 Opinion and Order (DOC #233) at p. 21.

[3] The only slight modification to these amounts concerns the money owed pursuant to the Harvard Settlement Agreement. Plaintiff accepted the Court's findings that eight employees were owed $45,442.62 in backwages as opposed to the higher amount of $89,325.21 originally sought under the Harvard Settlement Agreement. Thus, Plaintiff has no revisions to make to any of the WH-55s and WH-56s for either time period because the Court accepted those calculations in its July 10, 2015 Opinion and Order (DOC #233) and in its December 22, 2015 Opinion and Order (DOC # 307). Thus, the $45,442.62 awarded by the Court concerning the Harvard Settlement Agreement is the only thing that differs from anything ever submitted to the Court by the Plaintiff concerning the backwages owed to Defendants' employees. See Court's July 10,

reference herein those documents as well as the Court's July 10 2015 Opinion and Order (DOC #233) and the Court's December 22, 2015 Opinion and Order (DOC #307). Those documents along with the Court's Orders (DOCS #233 and #307) provide for the following backwages to be awarded:

**Back wages for the first time period (October 22, 2009 to August 6, 2011):**

**Broken Arrow - $138,013.90 for overtime compensation**
**Owasso - $122,469.80 for overtime compensation**
**Memorial - $126,404.12 for overtime compensation**

See Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194), specifically Exhibits 5 and 24; see also July 10, 2015 Opinion and Order (DOC #233) at pp. 17-21. The precise amounts owed, and previously awarded to each employee for the first time period, are contained in Exhibit 24 to Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194). See Ex. 24 to Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194).

The Court found in its July 10, 2015 Opinion and Order (DOC #233) that Defendants failed to pay eight employees when Defendants accepted "kickbacks" in the amount of $45,442.62. See Court's July 10, 2015 Opinion and Order (DOC #233) at p. 21. Those eight employees are identified in Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194), specifically Exhibits 5 and 22. Those eight employees, as well as the specific amount each is owed, are as follows:

Ana Aguirre - $551.74;
Marco Antonio Gonzalez - $1,777.79;
Fernando Martinez - $4,977.82;

---

2015 Opinion and Order (DOC #233).

Francisco Perez - $4,720.57;
Melecio Perez - $10,398.36;
Javier Razo - $10,403.74;
Ramon Rodriquez - $2,208.86; and
Abel Torres - $10,403.74.[4]

Defendants admitted that these eight employees returned $45,442.62 in backwages paid to them. See Defendants' May 1, 2015 Response to Plaintiff's Motion for Summary Judgment (DOC #213), specifically Defendant Carlos Aguirre's Declaration at p. 2 ¶ 9. Accordingly, the Court awarded these eight employees $45,442.62 in backwages pursuant to its July 10, 2015 Opinion and Order (DOC #233). See Court's July 10, 2015 Opinion and Order (DOC #233) at p. 21. Plaintiff accepted this finding and chose not to pursue any additional backwages owed to employees pursuant to the Harvard Settlement Agreement. See Plaintiff's Notice of Revised Backwages Owed And To Be Awarded (DOC #238).

[4] The Court did not specify in its' July 10, 2015 Opinion and Order how much money was due each employee. See Court's July 10, 2015 Opinion and Order (DOC #233) at p. 21. Plaintiff believed more money was owed each employee then the amounts awarded by the Court, but chose not to pursue those amounts further and instead accepted the Court's findings. As explained in his Declaration, which is attached as Ex. A to this Second Notice, Wage Hour Oklahoma City District Director Michael Speer has prorated the amounts originally sought to meet the amounts the Court found owed these employees. See Ex. A to this Second Notice. The eight employees are also owed an equal amount in liquidated damages. See Court's July 10, 2015 Opinion and Order (DOC #233) at pp. 21-25.

Pursuant to the Court's July 10, 2015 Opinion and Order (DOC #233), the Court also awarded the backwages for the second time period. See Court's July 10, 2015 Opinion and Order (DOC #233).

**Back wages due for the second time period (August 7, 2011 to June 30, 2014):**

**Broken Arrow - $120,437.93 for overtime compensation,**
**Owasso - $177,152.27 for overtime compensation,**
**Memorial - $176,485.46 for overtime compensation,**
**Harvard - $162,407.62 for overtime compensation**

**Total backwages owed for the second time period are $636,483.28.**

See Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194), specifically Exhibits 5 and 25; see also See July 10, 2015 Opinion and Order (DOC #233) at pp. 17-21. The precise amounts owed, and previously awarded to each employee for the second time period, are contained in Exhibit 25 to Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194). See Ex. 25 to Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193 and 194).

Also pursuant to the Court's July 10, 2015 Opinion and Order (DOC #233), the Court awarded liquidated damages for both time periods and for the amounts owed pursuant to the Harvard Settlement Agreement. See Court's July 10, 2015 Opinion and Order (DOC #233) at pp. 21-25.

Finally, on July 14, 2015, Plaintiff filed his Notice of Revised Backwages Owed And To Be Awarded. See Plaintiff's Notice of Revised Backwages Owed And To Be Awarded (DOC #238). Plaintiff's first Notice (DOC #238) explained that Plaintiff was only going to try the willful issue and outlined the amount of backwages that would be owed, depending on whether

Plaintiff won or lost on that issue.[5] See Id. Plaintiff incorporates that document (DOC #238) as well as the Declaration of Wage Hour Oklahoma City District Director Michael Speer attached thereto by reference herein. See Ex. A to Plaintiff's First Notice (DOC #238).

As are result of the above-referenced findings by the Court, the Court should enter a Final Order in the following amounts:

**Back wages for the first time period (October 22, 2009 to August 6, 2011):**

**Broken Arrow - $138,013.90 for overtime compensation,**
**Owasso - $122,469.80 for overtime compensation,**
**Memorial - $126,404.12 for overtime compensation,**
**Harvard - $45,442.62 owed to 8 employees as part of kick-backs to Harvard Settlement Agreement,**
**Total Backwages for first time period - $432,330.44**.

**Back wages due for the second time period (August 7, 2011 to June 30, 2014):**

**Broken Arrow - $120,437.93 for overtime compensation,**
**Owasso - $177,152.27 for overtime compensation,**
**Memorial - $176,485.46 for overtime compensation,**
**Harvard - $162,407.62 for overtime compensation,**

**Total backwages owed for the second time period are $636,483.28.**

**TOTAL BACKWAGES BOTH TIME PERIODS - $1,068,813.72**
**EQUAL AMOUNT IN LIQUIDATE DAMAGES – 1,068,813.72**

**TOTAL BACKWAGES AND LIQUIDATED DAMAGES AWARDED –**

**$2,137,627.44**

See Plaintiff's March 19, 2015 Motion and Brief for Summary Judgment (DOCS #190, 191, 193

---

[5] Plaintiff never submitted revised WH-55s and WH-56s because Plaintiff did not believe it was necessary at the time. However, Plaintiff did want to have a record that summarized the two potential backwage and liquidated damages scenarios, which again were dependent upon the willful issue, and thus, filed the first Notice (DOC #238). See Plaintiff' First Notice (DOC #238).

and 194), specifically Exhibits 5, 22, 24, and 25; see also Plaintiff's Notice of Revised Backwages Owed And To Be Awarded (DOC #238) and Ex. A attached thereto; see also Ex. A to this Second Notice; see also Court's July 10, 2015 Opinion and Order (DOC #233) at pp. 17-21; see also Court's December 22, 2015 Opinion and Order (DOC #307).

Accordingly based on the Court's July 10, 2015 Opinion and Order (DOC #233) and the Court's December 22, 2015 Opinion and Order (DOC #307), the Court should enter a Final Order awarding $2,137,627.44 in backwages and liquidated damages for the period of October 22, 2009 through June 30, 2014.

WHEREFORE, Plaintiff respectfully files this Second Notice of Revised Backwages Owed and Awarded and asks that the Court issue a Final Order in the amounts outlined herein based on the evidence previously submitted by the Plaintiff and accepted by the Court.

Respectfully Submitted,

M. PATRICIA SMITH
Solicitor of Labor

JAMES E. CULP
Regional Solicitor

MARGARET TERRY CRANFORD
Counsel for Wage and Hour

By:

s/ Matthew P. Sallusti
MATTHEW P. SALLUSTI
TX Bar No. 24013447
Email: sallusti.matthew@dol.gov

DEMIAN CAMACHO
CA Bar No. 286693
Email: camacho.demian@dol.gov
Attorneys for Plaintiff
RSOL No. 12-00629

U.S. Department of Labor
Office of the Solicitor
525 Griffin Street, Suite 501
Dallas, TX 75202
(972) 850-3100
(972) 850-3101-fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of January, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Bill V. Wilkinson
Wilkinson Law Firm
4812 East 81 Street #302
Tulsa, OK 74137
wilklaw@wilklaw.com

s/ Matthew P. Sallusti
MATTHEW P. SALLUSTI
Senior Trial Attorney

Perez v. El Tequila

Appeal No. 16-5002

Declaration of Michael D. Speer
January 5, 2016
(ECF No. 311-1)

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually,<br><br>Defendants. | ) | CIVIL ACTION NO. 12-CV-588-JED-PJC |

**DECLARATION OF MICHAEL D. SPEER**

1. My name is Michael D. Speer. I am the District Director for the Oklahoma City District Office, which includes the Tulsa Area Office, of the Wage and Hour Division, United States Department of Labor. My business address is 215 Dean A. McGee Avenue, Room 318, Oklahoma City, Oklahoma 73102.

2. I am over the age of 18 years and am competent to make this Declaration.

3. It is within the regular course of my business activities as a Department of Labor Wage Hour employee to perform or revise back wage calculations that have been performed by other Department of Labor Wage Hour employees.

4. This Declaration specifically incorporates my March 18, 2015 Declaration (DOC # 193), which was filed as an Exhibit to Plaintiff's Motion and Brief for Summary Judgment (DOCS #190 and 191), as well as my July 14, 2015 Declaration (DOC # 238-1), which was filed as an Exhibit to Plaintiff's Notice of Revised Backwages Owed and to be Awarded (DOC # 238). In my March 18, 2015 Declaration, I stated that 15 of Defendants' employees had not been paid pursuant to the signed Harvard WH-56 and Harvard Settlement Installment Agreement. (DOC # 193 at ¶ 5).

5. In its July 10, 2015 Opinion and Order (DOC #233), the Court partly granted Plaintiff's Motion for Summary Judgment. In its Order, the Court found that eight of the 15 employees owed money pursuant to the signed Harvard WH-56 and Harvard Settlement Installment Agreement had not been paid by Defendants and awarded these eight employees a total of $45,442.62. Plaintiff believed that these eight employees were actually owed a higher amount—i.e. a total of $72,251.54—but Plaintiff chose not to pursue the difference and instead accepted the Court's finding. Although the Court awarded these eight employees $45, 442.62, the Court did not specify how much money each employee was owed. To determine the precise amount owed to each employee, Plaintiff divided the $45,442.62 on a prorated basis, as is demonstrated on the attached

spreadsheet. Exhibit 1, Backwage Spreadsheet. This spreadsheet identifies these eight employees and lists how much each employee is due.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on Jan 5, 2016.

MICHAEL D. SPEER
Oklahoma City Wage Hour District Director

EXHIBIT 1

**El Tequila Harvard Location Court Ordered Back Wages from 2011 File Case id: 1623513**

| | | WH-56 BWs Due | Settlement Agreement Interest Charged | Settlement Agreement Due with Interest | Percent Reduction | Final Due |
|---|---|---|---|---|---|---|
| Ana | Aguirre | $878.13 | $0.00 | $878.13 | 62.8329% | ***$551.74*** |
| Marco A | Gonzalez | $2,820.00 | $9.40 | $2,829.40 | 62.8329% | ***$1,777.79*** |
| Fernando | Martinez | $7,896.00 | $26.32 | $7,922.32 | 62.8329% | ***$4,977.82*** |
| Francisco | Perez | $7,512.89 | $0.00 | $7,512.89 | 62.8329% | ***$4,720.57*** |
| Melecio | Perez | $16,544.00 | $5.23 | $16,549.23 | 62.8329% | ***$10,398.36*** |
| Javier | Razo | $16,544.00 | $13.79 | $16,557.79 | 62.8329% | ***$10,403.74*** |
| Ramon | Rodriguez | $3,512.52 | $2.93 | $3,515.45 | 62.8329% | ***$2,208.86*** |
| Abel | Torres Campos | $16,544.00 | $13.79 | $16,557.79 | 62.8329% | ***$10,403.74*** |
| | Total Due | $72,251.54 | Total with Interest Due | **$72,323.00** | | **$45,442.62** |
| | | | Court Awarded | **$45,442.62** | | |
| | | | % Difference | **62.8329%** | | |

**Documents used to create this spreadsheet are:**
**The signed WH-56 from El Tequila Harvard location, case id: 1623513 for 2010 - 2011 investigation**
**The signed Settlement Agreement/Installment plan signed by Carlos on 9/22/2011 on this case**
**Court's July 10, 2015 Decision and Order (Page 21)**